WHITE *versus* SAYWARD *&· al.*

In an action against the editor of a newspaper for a libelous publication, it is admissible for the plaintiff to show articles, in subsequent numbers of the same paper, for the purpose of proving that the plaintiff was the person intended to be defamed.

Testimony of witnesses is not receivable to show that, on reading the libelous article, they considered the plaintiff as the person intended to be defamed.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J. presiding.

CASE, for libel.

The plaintiff is one of the firm of Thomas A. White & Co., consisting of himself and James White, traders in Bangor. The plaintiff proved, *that* on May 7th, the firm inserted in a newspaper, published in Bangor, the following advertisement : —

" BOY WANTED. — An honest and industrious young man, who is willing to give his whole attention to business, can have a good situation, on application to the subscribers. None need apply, except those who can bring the best of recommendations.                    Thomas A. White & Co. ;" —

*that*, on the next day the following article, which is the libel complained of, appeared in the Daily Whig and Courier, edited by the defendants, and published in the same city, viz. : —

" WARNING TO BOYS. — ' An honest and industrious young man, who is willing to give his whole attention to business,' had better think twice before going into that store, where the clerks are treated as much worse than the truck horses in the streets, as it is possible for the imagination to conceive.

" There are some stores, where, if the clerks leave by reason of such treatment as would disgrace a Mississippi slave driver, the keeper does not hesitate to break down the character of the young man, by cowardly insinuating something against his honesty, and basely misrepresenting his business qualifications." —

*that* on the 14th of May, there was published in the defend-

ants' paper an article adverting to this suit, (which was commenced on May 12,) and stating that the author of the article was able to respond to the defendants, and that the plaintiff's damage would not exceed a single mill, federal money ; —

and *that* on the 15th May there was published in the defendants' paper an article, adverting to some rumor respecting a lawsuit for a libel in Canada.

To the admission of the two last named articles in evidence, the defendants objected, but they were received.

The plaintiff offered several witnesses to prove that, on reading the article, alleged to be libelous, they understood it to apply to the firm of Thomas A. White & Co. This testimony, though objected to, was received, and they testified accordingly.

The verdict was for the plaintiff, and the defendants excepted.

*J. A. Peters,* for the plaintiff.

*Sanborn,* for the defendants.

TENNEY, J. — In the argument, the counsel for the defendants attempt to sustain their exceptions on two grounds only.

1. Were the articles published by the defendants in the Whig and Courier, on May 14 and 15, 1849, admissible in evidence ? Decisions are relied upon as sustaining each side of this question. In some cases, when such evidence has been pronounced inadmissible, the exclusion was upon the ground, that the subsequent charge was entirely a distinct matter from that which was the cause of action in the suit, and might be the foundation of an action itself. *Bodwell* v. *Swan,* 3 Pick. 376; *Watson & ux.* v. *Moore,* 2 Cush. 133. In other cases the evidence was held to be competent, to show the intention of the party, if it were at all equivocal in the publication, charged as libelous, but was not allowed merely for the purpose of enhancing damages. *Stuart* v. *Lovell,* 2 Stark. 93. The case of *Chubb* v. *Westley,* 6 Car. and P. 436, was similar. The plaintiff was permitted to read certain remarks in the same journal, in which the alleged libel was published,

made from month to month on the subject of the libel and the parties who were supposed to be concerned in the actions for it. The Court considered them admissible as showing the motive of the defendant, *quo animo* the former libels were published, and also as showing that the defendants themselves considered those libels as applying to the plaintiff. Similar evidence was admitted in *Bodwell* v. *Swan*, before referred to, for the purpose of showing malice, but the Court confined the evidence to such as were a repetition of the words on account of which the action was brought, or words of similar import, but would not allow a distinct calumny to be admitted. The case of *Watson & ux.* v. *Moore*, confirms the principle of *Bodwell* v. *Swan*, in adhering rigidly to the restriction therein declared, and further than that, the facts of the case did not require an examination of the principles therein announced. The doctrine of allowing subsequent publications repeating the matter of the former, or words of similar import, was affirmed in the case of *Smith & ux.* v. *Wyman*, 16 Maine, 13.

In order to recover in a suit for a libel, the plaintiff therein must satisfy the jury, that he was intended in the publication, and any subsequent article admitting that fact or tending to show it to be true is admissible. And if the defendant can introduce evidence suited to rebut the presumption of malice arising from the terms used in the publication, it is certainly competent for the plaintiff to counteract the effect of such evidence, by facts, having a contrary tendency.

If subsequent publications were to be entirely excluded great injustice might take place. It would be in the power of a party to so frame an article published, in reference to the person intended to be affected, that although it might be perfectly understood in the neighborhood of the one supposed to be accused, that he was referred to, and still be attended with great difficulty, if an attempt should be made to satisfy a jury upon that point. And the article may have been published under such circumstances, and in such terms, that it may be supposed that he was influenced by none but pure motives

and a sincere desire to prevent an imposition upon the public and individuals. Subsequent publications, made at a time when the author was less cautious, not libelous in themselves so much, as containing a reference to a former article, complained of, explanatory of the meaning, and exhibiting the motives and designs of the publisher, would be pertinent.

The article in the paper published the 14th of May, refers to the suit, which the plaintiff had instituted against the defendants. There is no assertion that he had fallen into an error in assuming that he was intended, but the jury would be authorized to infer, that the defendants intended to admit it. And instead of asserting a justifiable motive in the publication, they rely upon the author for their indemnity, and the opinion that the plaintiff will not be injured beyond the tenth part of a cent. The article of the 15th of May, has no direct reference to the publication on the 8th of May, but being the next day succeeding the second, wherein the former was referred to, and on a subject kindred to it, it might be regarded by the jury as having an important bearing upon the questions before them. It was headed " In luck," which would seem without meaning, if it was intended to be nothing more than a piece of newspaper information. It does not purport to be an extract from, or the substance of any article published in another paper, but merely a rumor, that an editor in Canada had found himself in a situation somewhat similar to the one which the defendants had announced the day before they were in. This was followed by a statement, that the editors were satisfied of their security from injury, by the supposed difficulty in *proving* that the one who had commenced his suit was intended ; and by the assumption that he was intended, there was proof that he was guilty of the charge. Those publications of the 14th and 15th of May, we think might tend to show the two propositions ; that the plaintiff was referred to in the one of the 8th of May ; and that the motives of the defendants were not such as to relieve them from the charge of malice, and the existence of it, implied in the arti-

cle itself; and the evidence was properly submitted to the jury.

2. The plaintiff introduced witnesses, though objected to, who testified, that they understood, that he was referred to in the article published on May 8, 1849. According to 2 Stark. 861, this evidence was competent. It is there stated in the text, "the colloquium and other averments, which connect the words or libel with the plaintiff or subject-matter before stated must be proved. This is usually done by the testimony of one or more witnesses, who knew the parties and circumstances, and who state their opinion and judgment as to the intention of the defendant, to apply his words or libel to the parties or circumstances as alleged." Mr. Greenleaf's treatise, 2d vol. sect. 417, contains the statement of a similar doctrine.

It is very clear, that the rule laid down by the two learned authors referred to, is an exception to the great principle, which is generally applicable to evidence. Witnesses are confined to the statement of facts and circumstances, leaving the inferences and conclusions to be drawn by the jury. It is an elementary doctrine in the law of evidence, that the understanding and opinions of witnesses are not to be received, except in matters of science and a few other special cases resting upon peculiar circumstances.

In *Van Vechten* v. *Hopkins*, 5 Johns. 211, it is said by the Court, "The intention of the defendant is not the subject of proof by witnesses, in the way here attempted. It is the mere opinion of the witness, which cannot and ought not to have any influence upon the verdict. I consider the evidence as inadmissible, because it goes to prove the correctness of an *inuendo*. This kind of evidence, I know has frequently, though I think erroneously, been admitted at *nisi prius*. SOUTHERLAND, J. in giving the opinon of the Court, in the case of *Gibson* v. *Williams*, 4 Wend. 320, referring to the doctrine of Mr. Starkie, contained in the citation made, says, "Mr. Starkie cites no case as authority in support of these positions, and it is believed that none can be found;

nor is the doctrine asserted, so far as I have been able to dis-
cover, by any other writer upon the law of libel or the rules
of evidence."

In looking into the authorities referred to, Mr. Greenleaf's
treatise, which was published long after the decision of the
case last cited, they certainly have but a very remote bear-
ing upon the question, and are very far from supporting the
doctrine of the text. *Maynard* v. *Beardsley*, 7 Wend. 560.
In the case of *Snell* v. *Snow*, 13 Metc. 278 ; the Court of
Massachusetts treat the evidence as entirely inadmissible.

We cannot regard such testimony of witnesses, an excep-
tion to the general rule of evidence, and it was erroneously
allowed to go to the jury.    Upon this point

<div align="right">

*Exceptions sustained and*
*new trial granted.*