JOSEPH P. WAGNER Respondent, v. THE SALINE COUNTY PROGRESS PRINTING COMPANY, Appellant.

Kansas City Court of Appeals, April 27, 1891.

1. **Libel:** PLEADING : PETITION. A petition for libel, set out in the opinion, is *held* to allege sufficient matter to connect the extrinsic facts with the publication, and is, therefore, not demurrable.

2. ———— : CONSTRUCTION : PLEADING. To make a good petition for a libel charging embezzlement, it is not necessary to set forth the elements of the crime with all the precision and certainty required in an indictment for the offense. In construing a libelous publication, the language should be given its natural and ordinary signification. And the publication in this case is *held* to charge embezzlement.

3. ———— : EVIDENCE AS TO UNDERSTANDING OF READERS. It is proper to admit testimony to show the understanding and meaning which readers had of and attached to the publication, where matter is alleged, and it is shown, as in this case, that something has occurred in consequence of which the words would convey a meaning additional to that which would ordinarily be attached to them.

4. ———: DAMAGES : MALICE : INSTRUCTIONS. An instruction authorizing exemplary damages if the jury believe the publication was made with malice, that is, with ill-will or hatred, cannot be complained of by defendant, since the clear inference is that such should not be allowed without proof of express malice, whereas such proof is not requisite to the allowance of such damages.

5. Trial, Practice : INSTRUCTION NOT LIMITING RECOVERY : HARMLESS ERROR. Where an instruction fails to limit the recovery to the amount charged in the petition, it is error ; but, where the verdict is within the amount charged, the error is not reversible.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Leslie Orear* and *Davis & Wingfield*, for appellant.

(1) The motion in arrest of judgment should have been sustained, because : The petition is fatally defective in this: *First.* The publication charged to be defamatory has no reference to the extrinsic facts pleaded by way of inducement, and the petition does not contain any averment that the publication complained of was of and concerning the extrinsic facts pleaded. This is traversable matter that must be pleaded. Bliss on Code Pleadings, sec. 305 ; *Christal v. Craig,* 80 Mo. 367, and cases cited ; *Legg v. Dunlevy,* 80 Mo. 558 ; *Curry v. Collins,* 37 Mo. 324 ; *Brittun v. Anthony,* 103 Mass. 37 ; *Snell v. Snow,* 13 Met. 278 ; *York v. Johnson,* 116 Mass. 482. *Second.* The alleged defamatory matter set out in the petition does not, and cannot, by any reasonable interpretation put upon it, even when considered with the extrinsic facts pleaded, constitute a charge of the crime of embezzlement as defined by the statutes of Missouri, or any adjudicated cases thereunder. R. S. 1889, sec. 3549 ; *State v. Reiley,* 4 Mo. App. 392 ; *State v. Jennings,* 98 Mo. 393; *State v. Pratt,* 98 Mo. 483. The publication does not charge that plaintiff as the agent of a widow, fraudulently and wrongfully, and without her consent, converted to his own use

insurance money that came into his possession, or under his control, by virtue of his employment as agent, with the intent of depriving the owner thereof. Cases, *supra.* The words employed in that part of the publication com-plained of as defamatory are not ambiguous, but are plain English words of ordinary signification, and hence must be construed in their ordinary sense. Townsend on Slander & Libel [4 Ed.] sec. 134, pp. 120, 133, note 2; secs. 146, 147, 148 and 149; *Railroad v. McCurdy*, 114 Penn. St. 554; s. c., 60 Am. Rep. 363; *Carter v. Andrews*, 16 Pick. 1; *Goodrich v. Hooper*, 97 Mass. 1; s. c., 93 Am. Dec. 49; *State v. Healey*, 48 Mo. 531; *Boyce v. Aubuchon*, 34 Mo. App. 415. (2) The second instruction given at the instance of plaintiff is erroneous in this: There was no evidence on the trial tending to show that the publication was made by defendant with malice toward plaintiff as defined in the instruction; and in this: The jury are told that they may consider all the circumstances in the case whether in evidence or not in assessing punitive damages. And the instruction is erroneous for the further reason that it permits the jury to assess the damages, both compensatory and punitive, without reference to the amount claimed in the petition; and allows the members of the jury to compound a ver-dict, regardless of the amount claimed in the petition. *Wright v. Jacobs*, 61 Mo. 19. (3) The court erred in permitting witnesses to testify as to their understanding of the meaning and effect of that part of the publication complained of. Townsend on Slander & Libel [4 Ed.] sec. 384; *Snell v. Snow*, 13 Metc. 278; *Railroad v. McCurdy, supra; Justice v. Kerlin*, 17 Indiana, 588; *Rangler v. Hummel*, 1 Wright, 130; s. c., 37 Pa. 130; *Elsworth v. Hays*, 71 Wis. 427; *Edwards v. Smith*, 63 Mo. 119, 127; *Weil v. Schwartz*, 21 Mo. App. 378, 380-1.

. *Frank P. Sebree* and *Samuel Boyd*, for respondent.

(1) The petition in this case states a cause of action. It is drawn upon the idea that in order to

make the publication impute a crime and become actionable *per se* extrinsic facts must be pleaded. The extrinsic facts are pleaded in the prefatory averments ; the publication is then set out, and the innuendo follows applying the language. This is the proper manner of pleading in such cases. *Wood v. Hilbish*, 23 Mo. App. 389. (2) The language of the publication must be taken in its ordinary meaning, and as it would probably be understood by the ordinary reader. The old rule of construction *in mitiori sensu* has long since been departed from. *Fallenstein v. Boothe*, 13 Mo. 427. (3) The second instruction given for plaintiff properly declares the measure of damages. In order to award compensatory damages it was not necessary for the jury to find malice. Malice in law is presumed. And if, from the circumstances of the case, the jury find actual malice, or malice in fact, that is, ill-will, hatred or bad intent on the part of the defendant toward plaintiff, then punitory damages may be awarded. *Wood v. Hilbish*, 23 Mo. App. 389 ; *Wilson v. Noonan*, 35 Wis. 349 ; *Pennington v. Meeks*, 46 Mo. 217; 3 Sutherland on Damages, 642; Cooley on Torts, 209. All this was the strongest kind of evidence of ill-will, hatred and bad intent of the publisher, and warranted the court in submitting the question of punitory damages to the jury. Townsend on Libel & Slander, sec. 399. The fact, that this instruction does not limit the amount of damages the jury might assess, was a harmless error. The verdict was for only one-fifth of the amount asked for in the petition, and the defendant was in no way injured by the failure of the instruction to confine the recovery to the amount prayed for. *Crews v. Lackland*, 67 Mo. 619. In the case cited by appellant ( 61 Mo. 19 ), the instruction charged the jury to find more than was asked in the petition. (4) In this case the evidence of persons who read the article at the time it was published, as to what they understood it to mean, was

competent. The publication did not charge the crime in direct and plain terms ; libelous publications rarely do, and the sense in which the ordinary reader understood the words, while not conclusive upon the jury, was entitled to be considered. *Nelson v. Borchenius*, 52 Ill. 236 ; *Barton v. Holmes*, 16 Iowa, 252 ; *De Armond v. Armstrong*, 37 Ind. 35 ; *Knapp v. Fuller*, 55 Vt. 311 ; 2 Greenl. Ev., sec. 417 ; Town. on Libel & Slander, sec. 140 ; Odgers on Libel & Slander, 538 ; R. S. 1879, sec. 1320 ; R. S. 1889, sec. 3549 ; *State v. Porter*, 26 Mo. 201 ; *State v. Healey*, 48 Mo. 531. The agency need not be directly averred, even in an indictment. It is sufficient if it appears from the matter stated. *State v. Dodson*, 72 Mo. 283 ; *State v. Porter*, 26 Mo. 206; *State v. Healey*, *supra ;* *Weil v. Tyler*, 38 Mo. 546.

ELLISON, J.—This is an action for libel and resulted in a verdict and judgment for plaintiff. Defendant claims certain prejudicial errors were committed by the trial court, for which the judgment is attacked. The libel charged was published in the Saline County *Progress*, a newspaper published in Saline county. The article is as follows :

" Judge J. Pecksniff Brother-in-Law (meaning the plaintiff) is at last beginning to feel the point of the *Progress'* pen through his prodigious pachyderm. He revealed the festering of the wound last Wednesday night in the 'tabernacle.' He will never forgive the *Progress* for showing up his Janus-faced hypocrisy, his Belshazzar's feast, at Mike McGinnis', etc. The Judge is wont, we believe, to publicly shed crocodile tears, and to roll up the whites of his eyes over poor suffering humanity in its sinful and lost condition. In this connection we recommend to the Judge's tender and pious commiseration the poor widow, the insurance on whose husband's life he collected many years ago. We understand she is very needy, and has judgment on him in our circuit court."

This charge is followed by the allegation that said newspaper meant, and by said publication intended, to falsely and maliciously charge that plaintiff had, as agent of one Mrs. Crump, collected for her the insurance money on her deceased husband's life, and wrongfully and without her consent converted it to his own use, and thereby was guilty of the crime of embezzlement. Before setting out this charge the petition alleged extrinsic matter by way of prefatory averment, in which it is stated: "That, in the year 1874, one James B. Crump died, leaving insurance on his life to the amount of about $700, payable to his widow, Mrs. A. M. Crump ; that in said year the insurance company owing said insurance sent a draft for the amount thereof, payable to Mrs. A. M. Crump, to this plaintiff to be by him delivered to her ; that plaintiff did, shortly after receipt by him of said draft, deliver the same to the said Mrs. A. M. Crump ; that the said Mrs. Crump indorsed and delivered said draft to plaintiff as her agent, with instruction to collect the same and retain out of the amount to be collected thereon the sum of $400, which amount she desired to pay her brother, George Garrett, and which amount said George Garrett then loaned this plaintiff, and took plaintiff's note therefor, and with the further instructions to pay one W. J. Knott out of said amount, to be collected on said draft, the sum of $150, and to pay the balance of the amount of said draft to said George Garrett; that plaintiff agreed with her to act as her agent, and to collect said draft and pay out the money as instructed by her as aforesaid ; that shortly after said draft was delivered to him by said Mrs. Crump as aforesaid, the plaintiff did collect the amount thereof on said draft and pay out as directed and instructed by said Mrs. Crump as aforesaid ; that afterwards plaintiff made payments on said note given by him, as aforesaid, to George Garrett, and, in the year 1877, plaintiff gave to George Garrett a renewal note for the balance of said first note, and afterwards said George Garrett gave said

renewal note to his sister, Mrs. Garrett, who at that time and at the time she obtained judgment, as hereinafter stated, was a widow; that afterwards, about the —— day of ———, the said Mrs. Garrett recovered a judgment against this plaintiff on said note so held by her, in the circuit court of Saline county, Missouri.''

The errors complained of are: *First.* That the petition does not state a cause of action, in that it does not, by proper averment, connect the extrinsic facts with the publication. *Second.* That the publication, when connected and considered with the extrinsic matter, does not constitute the crime of embezzlement. *Third.* That the publication does not charge that plaintiff as agent, without consent of the widow, converted to his own use the insurance money, with intent to deprive the owner of it. We cannot allow either of these objections to prevail. While the petition could, perhaps, with some more explicitness and precision, have connected the libelous charge with the extrinsic facts, yet it cannot be said to be so defective as to fail in stating a cause of action.

The second and third objections may be considered together. The charge published when explained by, and considered with, the extrinsic facts does clearly accuse plaintiff of the crime of embezzlement. If we were to allow full scope to the argument advanced for defendant, it would lead us into holding that in order to make a good petition for a libel charging embezzlement, it would be necessary to set forth the elements of the crime with all the precision and certainty required in an indictment for the offense. It is scarcely necessary to say that this is not required. We agree with counsel that, in construing the words employed in a libelous publication, the language should be given its natural and ordinary signification. But in cases of this nature, where the words charged are connected with other facts, such facts must be considered with the charge and the natural and ordinary signification given to the whole

matter thus connected. If, thus considered, a libel is not charged, the case fails. On the other hand, if a libel is charged, the case stands and must be met by the defendant.

We have not been able to see the significance to be attached to the question of demand which was referred to so frequently at the argument. A demand and refusal are not absolute requisites to the proof of embezzlement. The matter has doubtless arisen in the consideration given to the conversion which is necessary to make out embezzlement. But demand and refusal do not constitute conversion. It is merely evidence of that fact. *La Fayette Co. Bank v. Metcalf*, 40 Mo. App. 494.

The court permitted testimony to show the understanding and meaning which the readers of the paper had of, and attached to, the publication. This was proper testimony in a case of this kind. We may concede (for present purposes) that where the words are plain and unambiguous and disconnected from outside matter which would give them a different or additional meaning, that such evidence should not be heard. But where matter is alleged, and it is shown, as in this case, that something has occurred in consequence of which the words would convey a meaning additional to that which would ordinarily be attached to them, such testimony should be heard. Townsend on Slander, sec. 384; Odgers, Libel & Slander, 538.

And, where the language may or may not impute the crime which is charged to have been imputed, such testimony is proper. Townsend on Slander, sec. 140; 2 Greenleaf, Ev., sec. 417; *Nelson v. Borchenius*, 52 Ill. 236; *Knapp v. Fuller*, 55 Vermont, 311. The fact as to what was intended must be ultimately determined by the jury. In the latter case cited, witnesses who had read it were permitted to state their understanding of the language used in the following publication:

"One day last week two of our citizens went to the residence of a farmer a short distance from the village

on business, and on arriving there went to the door and rapped, but received no response ; they rapped a second time, and no response ; and a third time with the same result. They then opened the door and walked in, and as they did so who should emerge from the bedroom but one of our prominent officials with a young lady of the house, who, being inquired of as to the whereabouts of members of the family, said they were all absent but her. After some conversation our gay Lothario took his leave. Query : Was said official there on *probate* business ? Perhaps it would be in order for him to 'rise and explain, ' as many of our people would like to be informed.''

So far as concerns the rule of law here contended for, that article presents about the same necessity for extraneous matter and for elucidation by the under-standing of readers as the one here complained of.

The instructions for either party are not fairly subject to complaint. Number 2, for plaintiff, authorized exemplary damages if the jury should believe that the publication was made with malice towards plaintiff, that is, with ill-will or hatred. Of this defendant ought not to complain ; for the clear inference from the instruction is that such damages should not be allowed without proof of express malice, whereas such proof is not requisite to the allowance of such damages. The malice implied by law is sufficient. *Goetz v. Ambs*, 27 Mo. 28 ; *Buckley v. Knapp*, 48 Mo. 152 ; *Wood v. Hilbish*, 23 Mo. App. 389.

This instruction, however, fails to limit, in terms, the maximum amount the jury may find to the amount named in the petition ; and from this omission defendant claims error for which the judgment should be reversed. It is certainly erroneous; but the question remains, is it such error as has worked harm or injury to the defendant? The petition claimed $10,000, and the verdict was for $2,000, from which it mathematically appears, that, though the jury were not confined by

the instruction within the limit set in the petition, they so confined themselves. We must rule this point also against the defendant. The case of *Wright v. Jacobs*, 61 Mo. 19, in this respect is wholly unlike the question here. In that case the petition only claimed a premium of twenty per cent. on gold in a certain transaction, while the evidence showed an agreement for thirty per cent. From the nature of the case, the verdict of the jury could not disclose which rate was allowed; and it was, therefore, held that an instruction, which did not confine the rate to that claimed in the petition was erroneous. After a full examination of all points presented we are not able to discover any sufficient reason justifying us in disturbing the judgment, and it is accordingly affirmed. All concur.