## WILLIAM J. LEWIS, Respondent, v. ELISHA E. HUMPHRIES, Appellant.

### Kansas City Court of Appeals, January 20, 1896.

1. **Slander**: TRIAL PRACTICE: EVIDENCE: OBJECTION TOO LATE. Where the defendant permits a witness for the plaintiff without objection to testify to a certain state of facts and later on in the trial objects to evidence which is merely cumulative, its admission is no ground for disturbing the judgment.

2. ———: EVIDENCE: UNDERSTANDING: LANGUAGE. In an action for slander the plaintiff must allege, and prove, the words were used in an actionable sense and were so understood, and the testimony of the hearers as to how they understood the words is admissible. *Callahan v. Ingram*, 122 Mo. 355, distinguished.

3. ———: ———: MOTIVE OF DEFENDANT: MITIGATION. The defendant in an action for slander is answerable for the words he uses so far as compensatory damages are concerned, but his motives in speaking the words are admissible in evidence for the purpose of mitigation.

4. ———: ———: CIRCUMSTANCES: MITIGATION. In an action for slander the defendant may show the facts and circumstances and the information on which he formed his opinion in order to disprove malice and mitigate the damages.

5. ———: ———: DEMURRER. There was no error in overruling defendant's demurrer to the evidence in this case.

6. **Appellate Practice**: INSTRUCTION. Defendant can not complain of plaintiff's instructions where his own adopts the same theory.

7. **Slander**: MALICE: INSTRUCTIONS. Instructions of the plaintiff and defendant as to malice and the right to recover being read together in this case, are *held* to be harmonious.

*Appeal from the Sullivan Circuit Court.*—HON. W. W. RUCKER, Judge.

REVERSED AND REMANDED.

*John P. Butler* and *Harber & Knight* for appellant.

(1) The court permitted the plaintiff and others to testify that they understood from defendant's conversation, in which the slanderous language is alleged to have been spoken, that Humphreys charged plaintiff with the taking or stealing of some rails off a farm belonging to defendant. If the words spoken were unambiguous, the understanding of bystanders can not be shown to make words actionable which as alleged in the petition are not actionable *per se. Smith v. Gafford*, 33 Ala. 168; Townsend on Slander, sec. 140; *Callahan v. Ingram*, 122 Mo. 355. (2) The court refused to permit the defendant, Humphreys, who was a witness in his own behalf, to testify as to the intent and meaning of the language used. In this the trial court was in error. It was at least permissible in mitigation of damages. *Callahan v. Ingram, supra; Cooper v. Barber*, 24 Wend. 105; *Bieby v. Shaw*, 12 N. Y. 67; *Hatfield v. Lasher*, 81 N. Y. 249; Townsend on Slander, p. 676; 13 Am. and Eng. Encyclopedia of Law, pp. 429–440. (3) The court erred in overruling and refusing defendant's demurrer to the evidence at the close of plaintiff's case. If there was any poison the antidote went along and the plaintiff can not recover on his own showing. *Pasley v. Kemp*, 22 Mo. 409; *Hall v. Adkins*, 59 Mo. 144; *Trimble v. Foster*, 87 Mo. 49; Townsend on Slander, sec. 137, p. 127; Townsend on Slander, p. 134; 13 Am. and Eng. Encyclopedia of Law, p. 378. (4) The court erred in declaring the law in the several instructions given for plaintiff, and in refusing to declare the

law as requested by the defendant.     Townsend on
Slander, p. 127; *Callahan v. Ingram, supra*; *Pasley v.
Kemp*, 22 Mo. 409; *Hall v. Adkins*, 59 Mo. 144; Town-
send on Slander, p. 150; Townsend on Slander, p. 134.

*John M. Swallow* and *A. W. Mullins* for respondent.

(1) The court committed no error in admitting
the evidence of the plaintiff's witnesses with respect to
their understanding of the meaning the defendant
intended to convey by the language he used, and which
is set out in the petition. 2 Greenl. on Evidence,
sec. 417; *Walker v. Hoeffner*, 54 Mo. App. 554; *Bridge-
man v. Armer*, 57 Mo. App. 528, 533; *Wagner v.
Printing Co.*, 45 Mo. App. 6, 13; Townsend on Libel and
Slander, sec. 140; *Dyer v. Morris*, 4 Mo. 214, 218; 2
Wharton on Evidence, sec. 975, and note 1; *Leonard
v. Allen*, 11 Cush. (Mass.) 241; *Knapp v. Fuller*, 55
Vt. 311; 13 Am. and Eng. Encyclopedia of Law, 486,
and note 2; *Maynard v. Insurance Co.*, 34 Cal. 48;
*Unterberger v. Scharff*, 51 Mo. App. 102.     (2) The
court did not err in refusing to permit the defendant to
testify on the trial what meaning he intended to convey
by the language he used in speaking to and of and con-
cerning the plaintiff.     The speaking of the words, and
the spirit with which they were obviously spoken by
him and his repetition of them in substance, thereafter,
show that he was actuated by express malice. 13 Am.
and Eng. Encyclopedia of Law, 385, 386, and note 1;
*Walker v. Hoeffner*, 54 Mo. App. 554, and authorities
cited. (3) The instructions given by the court presented
the case correctly and fully and fairly for the consid-
eration of the jury.     *Fallenstein v. Boothe*, 13 Mo. 427;
*Johnson v. Dispatch Co.*, 2 Mo. App. 565; *McGinnis v.
George Knapp & Co.*, 109 Mo. 131; 13 Am. and Eng.
Encyclopedia of Law, 381, and notes.

SMITH, P. J.—This is an action for slander.    The plaintiff had judgment in the lower court, from which the defendant appeals.

It is alleged in the petition that the defendant spoke of and concerning the plaintiff in the presence of William Abernathy, D. G. Browning, and A. B. Trask, and divers other persons, the following false and slanderous words, that is to say: ''See here, I am going to have you [meaning plaintiff] arrested, if you [meaning plaintiff] don't come up and pay for them rails you [meaning plaintiff] took from down there, and I am going to jug you [meaning the plaintiff] and jug you [meaning the plaintiff] damned hard.''    Thereby meaning, and was so understood by the persons present and hearing said words, to charge the plaintiff with the crime of larceny in stealing and taking away fence rails, the property of defendant, by which plaintiff says he is damaged, etc.

The answer denies the speaking of the precise words alleged in the plaintiff's petition, and then proceeds to allege the words that were actually spoken by him and the facts and circumstances surrounding the speaking of the same.    It further alleges that ''in the use of the language and conversation hereinbefore stated in reference to said rails, he relied in good faith upon the information received from said Mantello, but did not charge, or intend to charge, the plaintiff with the crime of larceny, nor was he so understood by the persons then and there present; on the contrary, the defendant avers and charges the fact to be that he only charged and accused, and intended to charge and accuse, the plaintiff with the commission of a trespass in taking and hauling said rails away from off defendant's farm, and it was so understood by the persons then and there present, which defendant in good faith

believed to be true, and that when defendant said to plaintiff, 'I believe I will have you arrested,' defendant meant an arrest in relation to the said supposed trespass and was so understood by the persons then and there present and not otherwise.''

The defendant assigns as error the action of the court in permitting plaintiff and other witnesses to testify that they understood from the words alleged in the petition to have been uttered in their hearing by the defendant, that he (defendant) meant to charge plaintiff with stealing rails. It appears from the defendant's abstract that the plaintiff and the witness Brownlee were permitted, without objection, to testify that they understood from the words used by the defendant that the plaintiff had stolen the rails from defendant's place, and that he (defendant) was going to have plaintiff arrested for the act. It is quite true that later on the court permitted the witness just named, over the objection of defendant, with others, to testify as to what they understood the defendant meant by the use of the alleged slanderous words. The evidence thus admitted over defendant's objection was but cumulative of that which had been offered by plaintiff and admitted without challenge by defendant. The action of the court in admitting such evidence, even though improper, would of itself alone afford no ground for disturbing the judgment.

But did the court err in permitting the witnesses to testify their understanding of defendant's meaning in the language used? Both the plaintiff and defendant, in their respective pleadings, and instructions, have assumed that the words constituting the alleged slanderous charge are of the class that are not actionable per se. As to whether or not, in cases of this kind, the persons who heard the words charged to be slanderous, ought to be permitted to testify what meaning they

understood the defendant to convey by the words is a question upon which the authorities are not in accord. The following cases denying the proposition may be cited. *Van Vechten v. Hopkins*, 5 Johns. 211; *Gibson v. Williams*, 4 Wend. 320; *Bradbury v. Maynard*, 4 Wend. 359; *Goodrich v. Davis*, 11 Met. 484; *White v. Sayward*, 33 Me. 322; *Snell v. Snow*, 13 Metc. 278. But the affirmative of the proposition is supported by authorities of equal respectability.

The rule to be deduced from the authorities to be presently cited, including those of our own state, is that, in an action where the words are not obviously slanderous, that, in order to entitle plaintiff to recover, *first*, he must allege and prove that the words were actually used in an actionable sense and were applied to plaintiff; *second*, that the hearers so understood them, and upon this latter point the testimony of the hearers as to how they understood them is admissible. *Dyer v. Morris*, 4 Mo. 214; *Christal v. Craig*, 80 Mo. 367; *Unterberger v. Scharff*, 51 Mo. App. 102; *Walker v. Haeffner*, 54 Mo. App. 554; *Wagner v. Printing Co.*, 45 Mo. App. 6; *Buford v. Young*, 115 Ind. 174; *Smart v. Blanchard*, 42 N. H. 149; *Russell v. Kelly*, 44 Cal. 641; *Nidever v. Hall*, 67 Cal. 79; *Mix v. Woodward*, 12 Cam. 262; *Nelson v. Borchenius*, 52 Ill. 236; *Briggs v. Byrd*, 11 Ind. 353; *Tompkins v. Wisener*, 1 Smed. 458; *Leonard v. Allen*, 11 Cush. 271; Newell on Slander, sec. 770; Odgers on Slander, 436; Townsend on Slander, 641.

But the defendant cites, and relies on as denying the rule just stated, the recent ruling of the supreme court in *Callahan v. Ingram*, 122 Mo. 355. An examination of that case will show that the ruling there made was in a case where the words upon which the action was based were actionable in themselves. The words "downright thief" were in that case applied to

plaintiff, which the court say imputed to him the crime of larceny and were in themselves actionable. An innuendo in such case is superfluous and may be rejected. But, as in the present case, where the words charged are not actionable of themselves and are ambiguous, or are susceptible of a harmless or an injurious meaning, or are not necessarily slanderous, the plaintiff must, by innuendo, define the defamatory meaning which he seeks to put upon them, and it is for the jury to decide whether the words are capable of the meaning ascribed to them by the innuendo and whether in fact the words were understood in that sense by those who heard them uttered. In *Callahan v. Ingram, ante,* the words were actionable of themselves and, therefore, the court very properly ruled that it was not competent for the witness to testify as to his understanding of the meaning of the words used by the defendant. The case is, therefore, not in point here.

The defendant further objects that the trial court erred in its action in refusing to permit the defendant, who was a witness in his own behalf, to testify as to what meaning he intended to convey by the use of the alleged slanderous words. There was no error in the refusal of the court to permit the defendant to testify as to the motive and intention of the defendant in speaking the slanderous words, so far as his testimony in that regard affected the right to recover compensatory damages. The effect would be the same, though he meant one thing and said another. He is answerable for so inadequately expressing himself. But the motive and intention with which the words were spoken lie at the foundation of malice. They are the conditions upon which exemplary damages are founded and no good reason is perceived why a defendant should not be permitted to prove what his motive and intention were. The intention and motive of the defendant

were admissible for the purpose of mitigating the punishment by way of exemplary damages. This seems to be the rule declared in *Callahan v. Ingram*, already referred to, and in the authorities there cited. The court, therefore, erred in its refusal in this respect.

We think the court further erred in rejecting defendant's offer to show the facts and circumstances detailed in his answer, in relation to the taking of the rails by the plaintiff from the farm purchased by defendant of Stringer; also in rejecting defendant's offer to show that one Mantello had informed defendant that plaintiff had taken the rails from the farm purchased by defendant of Stringer, under an arrangement with the latter before the purchase of the same by defendant. Anything which tended to disprove malice was admissible in mitigation. The absence of malice may be shown by proving that defendant believed, and had some reason to believe, the charge to be true when made. This can be done either by proving that he received such information from others as induced him to believe the charge to be true, or by proving the existence of facts within his knowledge calculated to produce such belief. Townsend on Slander, 676; *Bush v. Prosser*, 11 N. Y. 347; *Hatfield v. Lasher*, 81 N. Y. 249; *Jones v. Townsend*, 21 Fla. 431.

Since, as we have seen, it was competent for the witnesses to testify, as they did, to their understanding of the words uttered by the defendant, and since it appears that they did testify that they understood the words in the sense ascribed to them in the innuendo, therefore, the plaintiff's *prima facie* case was properly made out and that the court did not err in overruling defendant's demurrer to the evidence.

The plaintiff's first instruction, standing alone, would probably be obnoxious to the rule declared in *Clark v. Hammerle*, 27 Mo. 55, and later cases, but

when read in connection with the defendant's twelfth, it will be seen that the case was fairly submitted to the consideration of the jury upon the whole evidence.

The further objection is made that the plaintiff's said instruction leaves it for the jury, *inter alia*, to find whether or not the defendant, in uttering the words, meant to charge thereby the plaintiff with the crime of larceny in stealing defendant's rails, and *was so understood by the persons then present and hearing such words*. We have already sufficiently shown, as we think, that it was necessary for the plaintiff both to allege and prove the fact submitted to the finding of the jury by the above italicized words. And besides this, the defendant's eighth and eleventh instructions told the jury that unless they found this fact, their verdict should be for defendant. So that the defendant would be in no condition to complain, even if the instruction were erroneous, which it is not.

No inconsistency is perceived between the plaintiff's fourth and the defendant's eleventh instructions. The former told the jury, in effect, that if the defendant, in speaking the words set out in the petition meant to impute to plaintiff the crime of larceny and was so understood by the persons present and hearing the same, then the law presumes such words were spoken maliciously. The latter declared that before plaintiff could recover, it devolved upon him to show that such words were spoken with malicious intention and were so understood by the persons hearing them. And when the two are read in connection with the plaintiff's second, defining malice, it becomes apparent that they are all sufficiently harmonious in expression.

We have given careful attention to the various objections urged to the action of the court in the giving and refusing of instructions, but have not been able to discover any that are well taken.

The instructions given by the court are quite full and comprehensive, covering every conceivable phase of the case. On account, however, of the errors in the rejecting of evidence, hereinbefore stated, the judgment must be reversed and cause remanded. All concur.