The STATE of Missouri, at the Relation and to the Use of the P. W. FINGER ROOFING COMPANY, a Corporation, Appellant,

v.

George W. KOCH and O. F. Schroeder, Co-partners, Doing Business as Koch-Schroeder Construction Company, and Western Surety Company, a Corporation, Respondents.

No. 22050.

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1954.

William H. Tombrink, St. Louis, Price Shoemaker, Elmer E. Reital, St. Joseph, for appellant.

Alva F. Lindsay, Brown, Douglas & Brown, R. A. Brown, Jr., St. Joseph, for respondents.

DEW, Judge.

The appellant, referred to hereinafter as plaintiff, brought this suit to recover upon two contracts for furnishing of labor and material for roofs on buildings at the State Hospital No. 1 at Fulton, Missouri. The action was brought in two counts. The first count was based on plaintiff's subcontract for roofing of the power plant on which plaintiff claims a balance due of $925.05, with interest. The second count was based on plaintiff's subcontract for roofing of other buildings of the institution, claiming a balance due thereon of $7,000, plus $2,500 extra labor and materials claimed, with interest. The respondents here were defendants Koch and Schroeder, a co-partnership, doing business as the Koch-Schroeder Construction Company, hereinafter called the "Construction Company", the general contractor, and defendant Western Surety Company, the surety on the job. The defendants pleaded a setoff as to each count. On Count I, the jury found against plaintiff on the petition and for defendants on their setoff in the sum of $925.05, and on Count II, the jury found for plaintiff on its claim in the amount of $4,390, and for defendants on their setoff in the amount of $2,610. The plaintiff has appealed.

The defendant Construction Company entered into a general or main contract with the State of Missouri on August 25, 1950, to build an addition to the power plant at State Hospital No. 1 at Fulton. On the same date the Construction Company entered into a general contract with the State of Missouri for certain repairs to other buildings which were a part of the hospital assembly of buildings. Under the terms of both general contracts, their performance was required in accordance with plans and specifications referred to and in evidence. Among the provisions of each subcontract the subcontractor agreed to comply with the terms of the general contract with respect to work and materials, fixed time limits for completion, and required bonds to be furnished.

According to the plaintiff's evidence on Count I, the subcontract for the roofing on the power plant called for a price of $1,750; that defendants were entitled to a credit for substitutions in the amount of $824.95, leaving a balance due plaintiff of $925.05, with interest; that the work was duly accepted and approved by the state authorities. Further, the plaintiff's evidence was that the ventilator on the roof of the power plant had been set before the composition roofing was laid, instead of afterward; that it was placed upon the concrete curb provided for it and the Construction Company had placed over two inches of Zonolite concrete around the base and therefore it became impossible for plaintiff to flash around the ventilator as required by the specifications to prevent leaks; that this was called to the attention of defendants' superintendent in charge, who ordered the plaintiff to complete the roofing regardless of the situation. The result was that, upon inspection, the work was disapproved by the state, and the Construction Company hired others to reset the ventilator and to complete the counter flashing, as required by the plans and specifications, after which the work was approved. For this work defendants' evidence tended to show that the Construction Company paid $518.90 and paid additional expenses made necessary thereby in the sum of $475, plus $37 for cleaning the downspouts after plaintiff left the job, or a total of $1,030.90. Plaintiff furnished no bond for this work.

According to plaintiff's evidence, under the second subcontract, a portion of the work thereunder was deleted by the state amounting to $2,610. This was, therefore, not paid to plaintiff, but was paid to the Construction Company in return for extra work claimed by it. The state paid the Construction Company the whole original

contract price in settlement. The jury found there was $4,390 unpaid on the plaintiff's second subcontract, but allowed defendants' setoff of $2,610.

As to plaintiff's claim for extras, there was evidence that tended to show that when the gutters and metal valleys were removed, nothing remained to protect the building from rain other than the bare sheathing boards; that the attention of defendants' superintendent was called to that situation and that the plaintiff's contract did not include "papering" the valleys and guttering, but the superintendent ordered plaintiff to "paper" them, which cost the plaintiff $2,608. Under the contract plaintiff was required to give a week's notice in writing of any extras claimed under instructions. No such notice was given by the plaintiff. No claim for such extras was made in plaintiff's final notice before suit. Plaintiff's evidence was that the claim was orally made to defendants' superintendent on the job. The court withdrew from the jury the plaintiff's claim for extras.

Under the plaintiff's allegations of error and points of authorities, its Points I, IV and VI are as follows:

"I. The court erred in overruling plaintiff's motion for directed verdicts on defendants' setoffs to Counts One and Two of plaintiff's petition.

"(a) Testimony is without probative force when a mere guess or based on hearsay. (Two citations.)"

"IV. The verdicts on both Counts One and Two is not supported by the evidence and is against the law and the evidence. (Citation.)"

"VI. The verdict should be set aside because under any view of the evidence it is apparent that the jury made a mistake in arriving at their verdict on each count. (Two citations.)"

■ These allegations do not conform to Supreme Court Rule 1.08, 42 V.A.M.S., and present nothing for our review. That rule required plaintiff's brief to contain "the points relied on, which shall specify the allegations of error, and citation of authorities thereunder". The only specification of error under plaintiff's Point I is a mere abstract statement of the law. Point IV does not set out wherein the verdicts are not supported by the evidence or against the law and the evidence. Point VI specifies no mistake made by the jury in arriving at their verdict. Ambrose v. M. F. A. Co-op. Ass'n, Mo., 266 S.W.2d 647.

■ Plaintiff's Point II is that the court erred in admitting, over objection, the oral testimony of defendant Schroeder because it was not the best evidence, and that the books and records were the best evidence. This evidently has reference to his testimony regarding the setoffs. Defendant Schroeder was asked by his counsel to explain defendants' setoff of $475 in Count II. He said the charges were for the additional services of a superintendent while plaintiff was still on the job and for expenses to Jefferson City to arrange for others to complete the work under the subcontract and which had been rejected. The witness consulted a memorandum. Plaintiff's counsel objected to the reading from it. The objection was sustained. After it developed that the writing had been prepared by witness and after he testified he was merely refreshing his memory as to the figures, the court allowed his testimony as to the expenses and values mentioned. Since the matters in question were of the witness' own knowledge, the fact that he had made a memorandum thereof did not render his oral testimony inadmissible. Schwartz v. Mercantile Trust Co., Mo.App., 279 S.W. 253, 256; 32 C.J.S., Evidence, § 786, page 711. We find no prejudicial error in the final ruling admitting the testimony of witness Schwartz described.

■ Plaintiff's Point III charges error on the part of the trial court in giving Instruction V, which withdrew from the jury's consideration plaintiff's claim for extra charges. The ground assigned is that there was sufficient competent evidence to support the charge for extra work. The extra work claimed was, as stated, the

papering or covering the areas where the plaintiff had removed guttering and the metal in the valleys where rain would enter the building while waiting on the tin work, and which covering plaintiff was instructed to do by the defendants' foreman, Mr. Davis. Plaintiff claimed this was not included in its contract. The defendants deny that this extra work was done; claim that it was included in the subcontract, and claim, further, that no claim for extras was made in the manner and at the time required by the contract. Whether or not such work was contemplated by the subcontract, the general contract required such claims to be made in writing "a reasonable time" after receipt of instructions for such work, and, in any event, before proceeding to execute such work; that "no such claim shall be valid unless so made and authorized by the owner in writing". Plaintiff's subcontract provided that the subcontractor agreed to "make all claims for extras * * * to the contractor in the manner provided in the General Conditions for like claims by the Contractor upon the Owner, except that the time for making claims for extra cost is one week". Plaintiff's evidence was that no such claim was made in the manner and in the time provided in his contract, but that it relied on the instructions from the defendants' superintendent Mr. Davis. It was not until June 4, 1951, in a letter from plaintiff to defendants, that plaintiff stated that its claim "should be increased" by $2,500 to cover extra labor and material in recovering the metal valleys and guttering and papering that area. Plaintiff's witness Mr. Finger testified that the reason no claim had been previously made for such extra amount was that plaintiff was then interested in collecting the face of the contract, but that, "in view of the fact that the defendants * * * saw fit to press demands for fictitious work that they didn't do, I saw fit to press my demand for $2608 for work that we actually did on the premises".

Plaintiff argues that if it did not comply with its contract as to notice of claim for extras, the defendants received the benefit of them and are in no position to complain. Defendants' witnesses denied that the extra work was done and contend that if it were done it would be included in plaintiff's contract. Thus both the facts and the liability for the claim for extras are in dispute. It is clear that the purpose and effect of the clause in the contract requiring a week's notice in writing of any claim that instructions received on the job would require "extras", and that such notice should be given before such work is done and if not, that such claim would be void, was to determine before the work was done the correctness of such claim, and to protect both parties against a dispute on that question after the labor had been expended and the liability therefor sustained. Under the evidence, it was not error for the court to give Instruction V, withdrawing plaintiff's claim for extras from the jury.

Plaintiff's final point is that it was error to give defendants' Instruction 16, which authorized a verdict for defendants on their setoffs. It submitted to the jury whether plaintiff failed to properly perform the contract according to the plans, conditions and specifications, the defendants' failure to consent to or acquiesce in such failure, and whether the result thereof put the defendants to additional expense to complete the work as called for by the plans, specifications and conditions. It is said that these are ultimate issues and that sufficient facts were not hypothesized to submit these issues to the jury, thereby giving the jury a roving commission. In disposing of this point we consider all of the instructions given.

In plaintiff's Instruction 6 it submitted to the jury whether plaintiff had completed the work "in accordance with" the contract, as modified, and whether, under other instructions, plaintiff properly performed "its work according to the plans, conditions and specifications". In plaintiff's Instruction 7, it submitted to the jury the issue whether it "completed all work necessary and furnished all the materials required to complete said contract" and authorized a verdict for plaintiff unless

it had failed "to properly perform its work according to the plans, conditions and specifications as shown by the evidence." If defendants' Instruction 16 required any further facts to be hypothesized to submit the issue of plaintiff's failure to perform its work according to the plans, specifications and conditions, the plaintiff had joined in a like omission in its Instructions 6 and 7, and cannot now charge the court with error in such general submission in defendants' Instruction 16. We find it was not reversible error to give defendants' Instruction 16. Lewis v. Humphries, 64 Mo.App. 466; Bauer Grocery Co. v. Smith, 74 Mo.App. 419; Davis v. Bond, 84 Mo.App. 504.

Finding no error substantially affecting the merits, we affirm the judgment.

All concur.