## Harry HUDSON

v.

## GUY GANNETT BROADCASTING COMPANY.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1987.

Decided Feb. 27, 1987.

Sunenblick & Reben, Stephen P. Sunenblick (orally), Portland, for plaintiff.

Preti, Flaherty & Beliveau, Jonathan S. Piper (orally), Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

ROBERTS, Justice.

Harry Hudson appeals from a summary judgment entered against him in the Superior Court, Cumberland County. In this libel case, Hudson contends that the court erred when it concluded that a television news broadcast aired by defendant Guy Gannett Broadcasting Company was not "of and concerning" him as a matter of law. The sole question on appeal is whether, for the purpose of surviving a summary judgment motion, Hudson presented sufficient evidence to permit a trier of fact to find that the broadcast was about him. Because we determine that a genuine issue of material fact does exist with respect to whether the broadcast was about Hudson, we vacate the summary judgment.

### I.

This case arose out of a 1983 police undercover operation at the S.D. Warren paper mill in Westbrook. The operation was designed to uncover illegal drug use and distribution at the mill. An undercover agent was employed at S.D. Warren in order to gather drug-related evidence. On December 22, 1983 the agent reported to management that Hudson had been drink-

ing alcohol on the job. On February 15, 1984 twelve S.D. Warren workers were terminated from their jobs, including Hudson. Eleven were terminated for involvement with illegal drugs, and one, Hudson, for drinking alcohol while working in the mill. On February 16, 1984 Gannett broadcast on its six and eleven o'clock news shows (Channel 13 in Portland) that twelve S.D. Warren employees had been terminated on February 15, 1984 for involvement with illegal drugs.[1] The broadcasts did not mention any individual workers by name.

Hudson subsequently filed a libel action against Gannett claiming that he had been defamed by the broadcasts. Hudson alleged in his complaint that at the time of the termination it was "common knowledge" in Westbrook that twelve S.D. Warren employees had been fired as a result of a police undercover operation and that Harry Hudson was one of the twelve. Hudson also alleged that after the news broadcasts, some people living in and around Westbrook believed that he had been terminated for illegal drug involvement, while in fact he had been terminated for alleged alcohol abuse.

■ Gannett, pursuant to M.R.Civ.P. 56, moved for a summary judgment, arguing that the broadcasts were not of and concerning Hudson, and thus lacked an indispensable element of a libel action as a matter of law.[2] To support its motion, Gannett submitted the affidavit of Bruce Berlinger, the newsperson who read the allegedly defamatory broadcast on Channel 13's six and eleven o'clock news shows. Attached to the affidavit is a copy of the script read over the air by Berlinger. In his affidavit, Berlinger merely acknowledges that the attached script was read over the air on the date in question. No other evidence was submitted by Gannett to support its motion for summary judgment. In response, Hudson submitted the affidavit of John Jordan, one of Hudson's co-workers at the mill. Jordan stated that he heard the Channel 13 broadcasts concerning the terminations. Based on those broadcasts he believed that twelve unnamed S.D. Warren employees had been terminated for illegal drug use. When Jordan went to work the next day he learned that Hudson had been among the twelve employees terminated. Based on what he had learned from the Channel 13 broadcasts the previous night, Jordan believed that Hudson had been terminated for involvement with illegal drugs.

The Superior Court, initially without elaboration, entered a summary judgment for Gannett. In a subsequently issued order, the court explained that summary judgment had been entered for Gannett because the broadcasts were not, as a matter of law, of and concerning Hudson. Hudson contends that Jordan's affidavit, together with the pleadings, generates a genuine issue of material fact that cannot be resolved as a matter of law at the summary judgment stage. The factual issue generated, argues Hudson, is the reasonableness of Jordan's belief that the broadcasts were about Hudson.

## II.

■ The trial court did not elaborate on the degree of proof it utilized when it

---

1. Gannett's affidavit sets forth the text of the broadcasts as follows:
   Six o'clock broadcast: "Twelve S.D. Warren workers have been dismissed from the compnay (sic) for their involvement with illegal drugs. The two labor unions at the plant are in agreement with the dismissals. Seven of those were arrested yesterday for trafficking marijuana and cocaine. They are now out on bail. The other five employees were not arrested, but they did lose their jobs for allegedly using drugs. The arrests came after several months of investigation by a special task force of state and Westbrook police."
   Eleven o'clock broadcast: "And the S.D. Warren Company in Westbrook has fired 12 employees after a drug investigation by state and

Westbrook police. Yesterday, seven people were arrested for traficking (sic) in marijuana and cocaine. They were fired by the company, along with five others who had been using drugs. Union officials are in agreement with the company on today's action. A contract provision (sic) says that use of or trafficking in illegal drugs is grounds for immediate dismissal."

2. This element, sometimes called "the specific reference requirement," means that the plaintiff must be identified either expressly or by clear implication. See *Blatty v. New York Times Company*, 42 Cal.3d 1033, 232 Cal.Rptr. 542, 728 P.2d 1177, 1183 (1986).

granted the summary judgment motion nor have we ever squarely addressed this question in the circumstances now before us. We recognize that a public figure plaintiff must prove some elements with "convincing clarity." *See Anderson v. Liberty Lobby, Inc.*, — U.S. —, —, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Tucci v. Guy Gannett Publishing Co.*, 464 A.2d 161, 166 (Me.1983). In the case at bar, however, we perceive no similar constitutional requirement to apply a heightened standard of proof. Rather, Hudson is a private figure plaintiff suing a media defendant about speech concerning a matter of public importance. The case thus resembles the party alignment and type of speech found in *Gertz v. Welsh*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In *Gertz*, the United States Supreme Court held, *inter alia*, that in non-public figure defamation cases states could apply any basis of liability except liability without fault. Assuming that negligence is the type of conduct that must be proved in this case,[3] the plaintiff must establish it by a preponderance of the evidence. In our view, the specific reference requirement should be subject to the same standard of proof as the other essential elements of a private figure defamation case. We conclude that *Anderson* does not hold to the contrary. Thus, the Superior Court could grant a summary judgment on the "of and

concerning" issue only if, upon viewing the evidence most favorably to the plaintiff, there exists no genuine issue of fact from which a jury could reasonably find by a preponderance of the evidence that the defendant's publications were of and concerning the plaintiff.[4]

### III.

■ With this standard in mind, we address Hudson's contention that the trial court erred when it entered a summary judgment against him. At the outset, it should be noted that "in order for written or spoken language, otherwise defamatory, to be actionable, it must be 'of or concerning the plaintiff.'" *Robinson v. Guy Gannett Publishing Co.*, 297 F.Supp. 722, 725 (D.Me.1969) (quoting *Judkins v. Buckland*, 149 Me. 59, 65, 98 A.2d 538 (1953)).[5] Hudson argues, and we agree, that the "of and concerning" requirement is an essentially factual issue that will almost always be material in a libel case. Jordan's affidavit, together with Hudson's complaint, adequately establishes for the purposes of summary judgment that a genuine issue exists as to whether some people in the Westbrook community believe Gannett's broadcasts refer to Hudson. It is difficult to understand how else Hudson could establish that the broadcast referred to him, especially since no one was mentioned by

3. The record shows that the parties and the trial court proceeded under the assumption that negligence was the proper basis of liability in this case.

4. For an opposing view see *Mark v. Seattle Times*, 96 Wash.2d 473, 485–87, 635 P.2d 1081, 1088–89 (1981) (en banc), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2942, 73 L.Ed.2d 1339 (1982), where the Washington Supreme Court upheld the trial court's grant of summary judgment to a media defendant in a case brought by a private individual concerning a matter of public interest. In that case, the Court determined that while negligence was the proper standard of liability to be applied, the plaintiff was nevertheless required to demonstrate a prima facie case of negligence with "convincing clarity" at the summary judgment stage. The Court held that all of the elements of a libel action must be proved in this manner, presumably including the "of and concerning" requirement. *Id.* at 1088–89 (citing with approval *Sims v. KIRO,*

*Inc.*, 20 Wash.App. 229, 237, 580 P.2d 642, 647 (1978), *cert. denied*, 441 U.S. 945, 99 S.Ct. 2164, 60 L.Ed.2d 1047 (1979) (at summary judgment stage plaintiff must establish with "convincing clarity" identity of allegedly defamed individual)). We note that the Washington Supreme Court recently declined to apply this heightened evidentiary standard at the summary judgment stage in a defamation case involving a private figure plaintiff and a non-media defendant concerning essentially private affairs. *See Dunlap v. Wayne*, 105 Wash.2d 529, 534, 716 P.2d 842, 846 (1986). The Court in *Dunlap* determined that the usual rules governing summary judgment motions would be applied.

5. At least in public figure defamation cases the first amendment to the United States Constitution also requires that a publication, to be actionable, must be "of and concerning" the plaintiff. *See Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).

name.[6] So far as the record presently discloses, Gannett intended to describe Hudson and at least one person so interpreted its broadcast.

Eliciting proof from an actual recipient of the publication concerning what the recipient reasonably believes and whether the statement is or is not about an allegedly defamed plaintiff is consistent with the "of and concerning" requirement as it is characterized in the *Restatement (Second) of Torts* § 564 (1977): "A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer."[7] With the focus on the recipient's understanding, the plaintiff logically seeks to establish at least one person's understanding of the broadcast as referring to the plaintiff in order to avoid a summary judgment on the "of and concerning" issue. Indeed, unless a defamation plaintiff introduces some evidence linking him to the publication, he fails to establish an essential element of a libel action. *See, e.g., Granger v. Time, Inc.,* 174 Mont. 42, 47–49, 568 P.2d 535, 539–40 (1977) ("of and concerning" requirement not met as a matter of law because plaintiffs failed to submit any evidence linking them to article); *Robinson v. Guy Gannett Publishing Co.,* 297 F.Supp. at 726 (court dismisses libel action because of failure to prove "that any person who read the article and saw the picture understood that the article referred to plaintiffs ...").

Gannett, in support of the trial court's judgment, argues that a court, when deciding the "of and concerning" issue, must put itself in the position of the average or ordinary recipient of the communication, and that the speech must be stripped of explanatory circumstances. Only if a "hypothetical" recipient would understand the publication as referring to the plaintiff, Gannett argues, should the court deny its motion for summary judgment.

We reject this novel view of the "of and concerning" requirement. Gannett cites *Picard v. Brennan,* 307 A.2d 833 (Me.1973) and *Barger v. Playboy Enterprises, Inc.,* 564 F.Supp. 1151 (N.D.Cal.1983), *aff'd,* 732 F.2d 163, *cert. denied,* 469 U.S. 853, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984), as authority for this "average viewer" analysis of the "of and concerning" requirement. Neither case, however, supports the proposition for which it is cited. In *Picard* we were concerned with the meaning to assign allegedly defamatory language in order to determine whether that language was actionable as a matter of law. To ascertain that meaning, we explained that a court should view the language as it would be understood by an ordinary, intelligent recipient, and that it must be " 'stripped of innuendo, insinuation, colloquium, and explanatory circumstances.... If the language is plain and free from ambiguity, it is solely a question for the Court whether it is actionable.' " *Picard v. Brennan,* 307 A.2d at 835 (quoting *Chapman v. Gannett,* 132 Me. 389, 391, 171 A. 397, 398 (1934)) (quoting *Cooley on Torts* § 146). The identity of the plaintiff in *Picard* was not in dispute. Similarly, in *Barger,* the district court was also attempting to ascertain the meaning to assign language in order to determine its "actionability." Utilizing an "average reader" analysis, the court held that the groups referred to in the allegedly defamatory article were not small enough to support a group libel action. The "average reader" inquiry was directed at the meaning to assign certain words used in the article, not whether an "average read-

---

**6.** The early Maine case of *White v. Sayward,* 33 Me. 322 (1851), does not hold to the contrary. The *White* court treated the testimony of a reader as an opinion offered to prove the intent of the writer of a newspaper article. As such, the Court held that the opinion was properly excluded.

**7.** Comment (a) to § 564 notes that:
   *Person intended:* It is necessary that the recipient of the defamatory communication under-

stand it as intended to refer to the plaintiff. If it is in fact intended to refer to him, it is enough that it is so understood even though he is so inaccurately described that it is extraordinary that the communication is correctly understood. If, however, the recipient does not understand that the plaintiff is intended by it, the fact that the defamer intended to refer to him is immaterial.

er" could reasonably connect the article to a particular plaintiff. *Barger,* 564 F.Supp. at 1154–55.

 Gannett also argues that because Jordan did not realize that the broadcasts referred to Hudson until he arrived at work the following day, Jordan's affidavit does not adequately demonstrate that the "of and concerning" requirement was met. We reject this view. To satisfy the "of and concerning" requirement a recipient need not immediately connect the plaintiff with the broadcast. Other information may be utilized by a recipient even if that information does not come from the broadcast itself. To accept Gannett's argument would unduly hinder plaintiffs in proving the "of and concerning" requirement.

While we recognize that there may be factual circumstances where the "of and concerning" requirement can and should be decided preliminarily as a matter of law, this case does not present such circumstances.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.