[No. 168-3.    Division Three.    May 3, 1971.]

FRANK ROMANO *et al., Respondents, v.* UNITED BUCKINGHAM FREIGHT LINES, *Appellant.*

*Paul J. Allison* (of *Randall & Danskin*), for appellant.

*Frank M. Spinelli* and *Carl Diana,* for respondents.

GREEN, J.—This is a defamation action. The jury awarded $8,750 each to plaintiffs, Frank Romano and John B. Mc-Mackin against defendant, United Buckingham Freight Lines. A motion for new trial or judgment n.o.v. was denied; judgment was entered on the verdict. Defendant appeals.

Plaintiffs had been truck drivers for defendant and its predecessor, United Truck Lines, for 15 years. They worked as a sleeper team on long hauls for about a year prior to April, 1967. On April 3, 1967, plaintiffs made a trip from Spokane to Omaha, returning on April 7. On their return to Spokane, a customer in Seattle complained to defendant

about delay of the Omaha return shipment. Investigation disclosed no driver delay, but rather terminal delay in Omaha and Spokane. During this investigation, Melvin Strand, defendant's driver safety supervisor in Spokane, observed discrepancies between the time recorded in plaintiffs' log books and the tachometer charts taken from the truck. About April 16, Romano, who was then on an approved 30-day leave, was called to defendant's office to explain the discrepancies to Neil Prior, personnel manager, and to Strand. Romano testified he thought everything was satisfactorily explained. McMackin was unavailable for the meeting because he was on an approved leave to visit a sister in Missouri. The jury could have found on disputed evidence the only discrepancy resulting in any cost to the company was 25 minutes at the outset of the trip. Drivers are paid on a mileage basis while the truck is on the road; however, when they are servicing the truck and are not on the road they are paid on an hourly basis, called "delayed time." Plaintiffs explained the delay was to obtain truck chains at the shop.

On April 25, without warning or request for further explanation, defendant's Spokane terminal manager, Ross Perry, sent a letter to each plaintiff advising their employment was terminated for dishonesty in falsifying their logs and charging the company for delayed time when in fact they were on the road being paid mileage. Copies of these letters were sent to the Teamsters' Local in Spokane as required by union contract and to Prior, the personnel manager. In addition, Donald Kruger, defendant's dispatcher, was told by Strand or Prior of the discharge and the reason for it. Immediately, word of the discharge spread through the drivers and was a topic of conversation as far east as Chicago.

Plaintiffs protested the termination through the union and after a hearing on May 17, defendant was ordered to reinstate plaintiffs immediately with full seniority but without back pay. (It should be noted plaintiffs were on leave during this period.) Thereafter, plaintiffs resigned.

They testified if defendant would terminate them over a dispute of 25 minutes, considering their length of service, a return to the job would result in an attempt to find some other reason to dismiss them. Neither plaintiff returned to truck driving, each testifying he could not secure a driving job because of the incident.

First, defendant contends there was no substantial evidence to support the following propositions: (a) a slanderous statement concerning plaintiffs was published by defendant; (b) an agent of defendant had either express or implied authority to publish a statement concerning plaintiffs; and (c) if any slanderous statement were published, that such statement proximately caused damage to plaintiffs. Therefore, defendant argues the court erred in submitting the case to the jury and failing to grant a judgment n.o.v. or a new trial. We cannot agree.

■ The jury was told in court's instruction No. 9 the sending of the letter of April 25 to plaintiffs, the secretary of the Teamsters' Local, and to defendant's personnel manager, as well as disclosure of the letter's contents to its executive personnel, did not constitute a publication. Since no exception was taken to this instruction, it becomes the law of the case. *Tilton v. Cowles Publishing Co.*, 76 Wn.2d 707, 459 P.2d 8 (1969). Clearly, publications of the discharge and the reasons to Messrs. Perry, Prior and Strand fall within this instruction. For purposes of this opinion, we concede the instruction also covered dispatcher Kruger. However, it is evident defendant's truck drivers are not within the scope of the instruction.

Testimony shows the dispatcher kept a list of all drivers and their seniority. Because long hauls are more lucrative, they are assigned to drivers with highest seniority. Plaintiffs had high seniority and thus preference rights for long hauls. James Woodward, defendant's vice-president and Spokane division manager, testified it was normal procedure for the dispatcher to strike the name of a driver from the seniority list when he resigned; but if a driver was terminated, the name was merely removed temporarily

from the available drivers' list until the dispatcher was notified of the outcome of any protest filed with the union. If a protest was denied, the driver's name would be stricken from the list; whereas, if the protest was upheld, the driver would be reinstated on the regular list. For these reasons, the dispatcher was informed as to whether a driver had resigned or was terminated by the company.

On April 25 dispatcher Kruger was informed that plaintiffs were terminated for dishonesty in falsifying their logs. He testified the junior man on the list always inquires about the senior men above him and what they are doing. These inquiries are made because it affects the amount of pay each driver earns. While Kruger could not recall the names of any specific drivers, he testified "I must have told several because they would have asked why these two fellows aren't going out and I am getting this certain run, and of course you naturally tell them. . . . that they were terminated for falsifying their logs." He testified these statements would have been made during dispatch hours in response to the first inquiries about the time he learned plaintiffs were terminated. Kruger also said when a rumor gets started among drivers in the trucking business, it travels "the fastest in the world . . . it just goes everywhere"; this fact was common knowledge among defendant's management.

McMackin testified he first learned of his termination when he returned home about April 29. Several drivers telephoned him stating they heard plaintiffs were "terminated for dishonesty or padding the payroll or whatever term they used was. . . . Maybe it was stealing 15 minutes." He heard this information from his brother, Merton Howell, Phil Hoskins, and Paul Parent, who were truck drivers, and from dock foreman Ron Lester.

Romano testified that although he told no one other than his wife about the letter of April 25, he "heard the rumors from various drivers and from the waitress out at Post Falls . . . that we were—that I was fired for stealing time and falsifying my logs." The waitress at Post Falls

testified she heard these rumors from drivers at the cafe where she worked; this occurred about 2 weeks after plaintiffs went on leave, *i.e.*, about May 1. Howell was the only driver Romano specifically recalls as having telephoned him. Howell told Romano he was unaware of the termination until he heard the rumor from another driver, Paul Parent, around May 1 in Missoula. Later, the waitress in Post Falls repeated it to him.

Parent testified he heard of plaintiffs' termination for "stealing time, I believe" and verified the termination with dispatcher Kruger. Parent was junior in seniority to plaintiffs. He further testified he thought he first heard the rumor in some cafe over a cup of coffee prior to verifying the rumor with Kruger.

■ Defendant argues the foregoing evidence is insufficient because it does not definitely fix the time, place and names of the persons to whom Kruger made his statement; that the testimony of Parent is equally vague in that he stated the rumor of the termination was for "stealing time"; he was uncertain as to whether Kruger gave him a reason for the termination; and there is no evidence of the circumstances, time or place under which the statement from Kruger to Parent was made. Defendant relies on *Enright v. Bringgold,* 106 Wash. 233, 236, 179 P. 844 (1919). It is not applicable. In that case there was no evidence any third person heard or understood the alleged slander that was spoken and, further, the words spoken did not correspond substantially with the words charged.

We believe the testimony recited above, if believed, constituted substantial evidence to support a jury finding of publication. While defendant argues the rumors could have originated from the union as well as from plaintiffs' activities in preparing for the May 17 hearing, these are matters of fact for resolution by the jury. The term "stealing time" was used synonymously throughout the trial with dishonesty in falsifying the time recorded in a driver's log. It seems clear the terms have the same meaning in the trucking industry.

Court's instruction No. 4 to which no exception was taken instructed the jury as to the requirements of agency and constituted the law of the case. When the jury found for plaintiffs, it is evident they also found Kruger was acting within the scope of his agency. Whether or not Kruger had implied authority to reveal the reason for plaintiffs' termination to other drivers was a question for the jury under this instruction. The evidence shows management knew the dispatcher would be subjected to inquiries by drivers having seniority junior to plaintiffs. The dispatcher only needed to know of the fact of termination; not the reasons for it. When management told him the reasons, the jury considering all the circumstances could infer that management either intended or had no objection to his repeating it to the drivers. At least a question of fact existed for resolution by the jury. Their finding will not be disturbed.

Court's instruction Nos. 6 and 7 told the jury the statements alleged to have been made by defendant were slanderous per se and plaintiffs were not required to prove any special or pecuniary loss in order to recover substantial damages. Instruction No. 8 told the jury the law presumes damages from the publication of any slanderous per se statement, but this presumption merely refers to the fact of damage, and not to the extent or amount of damage. No exceptions were taken to instruction Nos. 6 and 8. Although exception was taken to court's instruction No. 7, no error is assigned on appeal.

No instruction was given or requested on proximate cause. Therefore, defendant's contention there is no substantial evidence the statements, if published, proximately caused damage is without merit. In any event, some evidence of proximate cause is shown by the record. Plaintiffs testified the telephone calls from other drivers had an adverse effect upon them; although plaintiffs' unsuccessful attempts to obtain other driving positions are not specifically documented, this testimony, if the jury chose to give any weight to it, is some evidence of the effect of the

slander. Further, Romano testified that while operating a tavern in Hillyard a customer made derogatory comments in front of other customers concerning their termination.

■ Second, defendant contends the jury award was so excessive as to unmistakably indicate it was the result of passion and prejudice, thus producing a failure of substantial justice requiring a new trial. Defendant's position is that the only publication established by the evidence was from Kruger to Parent; since Parent already knew of the termination and the reasons for it at the time he verified it with Kruger, there was no damage. We disagree. The record discloses evidence from which the jury could have found several publications by Kruger. Kruger's testimony shows that immediately after learning of the termination he published it to several drivers who told other drivers. Although defendant argues the rumors could have been started by the union or by the plaintiffs, this was a question of fact for the jury. In ruling upon the motion for new trial grounded upon the claim of excessive damage, the court said:

> If I were a juror and if I had awarded damages, probably I would not have awarded that much, but like Judge Hill said, the verdict may shake him, but it didn't shock him, and it wasn't so excessive as to shock the conscience of the court.

See *Harvey v. Wight*, 68 Wn.2d 205, 210, 412 P.2d 335 (1966). *Cf. Arnold v. National Union of Marine Cooks & Stewards*, 44 Wn.2d 183, 187, 265 P.2d 1051 (1954); *Michielli v. U. S. Mortgage Co.*, 58 Wn.2d 221, 361 P.2d 758 (1961); *Getchell v. Auto Bar Systems Northwest, Inc.*, 73 Wn.2d 831, 838, 440 P.2d 843 (1968). From our review of the record we are not shocked by the amount of the verdict and will not substitute our judgment for that of the trial judge.

■ Third, defendant contends (a) the statement made by Kruger to Parent and other truck drivers was qualifiedly privileged and therefore there was no publication as

a matter of law;[1] and (b) the jury improperly considered the termination letter of April 25 in arriving at its damage award.[2] Neither issue or theory was raised in the trial court. They cannot be considered for the first time on appeal. *Sohol v. Clark,* 78 Wn.2d 841, 479 P.2d 925 (1971).

Last, it is claimed a new trial should have been granted because of counsel's continuous reference to the slander as thievery and stealing time. It is argued these references were so prejudicial they could not be cured by instruction; therefore, a new trial should have been granted. We do not find an abuse of discretion in the denial of this contention.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.

---

[1]Even if this were an issue that could be considered on appeal, we do not believe the facts disclose the requisite proof of the common interest required for application of the privilege. 3 Restatement of Torts § 596 (1938), and cases relied upon by defendant. It is noted court's instruction No. 9 was essentially the one proposed by defendant. It limited the privileged disclosure to defendant's executive personnel, thus raising no issue as to communications between Kruger and the drivers.

[2]Instruction No. 9 told the jury the letter could not be considered as a publication insofar as it was published to the secretary of the union, defendant's personnel manager and other executive personnel. Defendant filed an affidavit of one juror indicating the letter had been considered by the jury in arriving at the amount of damage. Plaintiffs filed affidavits of eight other jurors contradicting this affidavit. A juror cannot impeach his own verdict, *Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 422 P.2d 515 (1967); a jury is presumed to follow instructions. *Myers v. Harter,* 76 Wn.2d 772, 459 P.2d 25 (1969).