[No. 6125–6–III. Division Three. April 9, 1985.]

COWICHE BASIN PARTNERSHIP, ET AL, *Appellants,*
v. LEN MAYER, *Respondent.*

*Douglas A. Wilson* and *Wilson & Mikesell,* for appellants.

*J. Eric Gustafson* and *Lyon, Beaulaurier, Weigand, Suko & Gustafson,* for respondent.

McINTURFF, J.—Cowiche Basin Partnership, Frontier Lands, Inc., and Dean and Victoria Thomas (hereinafter collectively referred to as Cowiche) appeal a summary judgment dismissing their action against Len Mayer for moneys allegedly due it under a mineral lease. We agree with the Superior Court's holding that Cowiche failed to obtain a proper ratification of the lease from its underlying contract holders; therefore, Mr. Mayer's lease obligations never matured.

On March 8, 1982, Cowiche contracted with Mr. Mayer to lease him certain mineral rights in Yakima County. The contract provided:

> (5) The Lessors hereby warrant their ownership of the good, absolute and marketable title to the entire mineral fee estate in the land leased to the Lessee, free and clear of all liens, encumbrances and burdens. . . . On or before April 1, 1982, this agreement and said lease shall be properly ratified by all of the contract sellers or lienholders appearing in the recorded chain of title to said land. . . .

The agreement covered two parcels of land, section 15 and section 6 of township 13 north, range 16, E.W.M.

Cowiche was purchasing section 6 from Rainier Bank and Arnold Feely, pursuant to the terms of a real estate contract. On April 19, 1982, the bank and Mr. Feely signed a

ratification of the mineral lease between Cowiche and Mr. Mayer. The ratification provided:

> As a substantial part of the consideration for this Ratification, *all parties* understand and agree that the Real Estate Contract running between Rainier Bank and Arnold Feely, as sellers, and Dean W. Thomas and Victoria Thomas and Frontier Lands, Inc., as purchasers, will be paid in full prior to any substantial withdrawal of minerals from the land.
>
> We hereby agree and declare that said Oil and Gas Lease in all of its terms and provisions is binding on us and each of us. . . .
>
> Notwithstanding the foregoing, Rainier Bank and Arnold Feely shall not be bound by the clause in said Lease providing that "Lessor hereby warrants and agrees to defend the title to the land above–described."

(Italics ours.) "Parties", as referred to generally in the ratification, is not specifically limited to the parties to the real estate contract. In fact, Len Mayer and his proposed lease are identified in the initial paragraph of the ratification. The balance due and owing on the real estate contract was $70,000 at this time.

On April 26, 1982, Mr. Mayer's office assistant, Gary Holcomb, wrote to Cowiche's attorney advising that section 6 would not be included in the lease because (1) Rainier and Mr. Feely had amended the form ratification supplied by Mr. Mayer to Cowiche by adding the language requiring payment in full of the real estate contract prior to substantial withdrawal of minerals from the land and by adding the language which removed them from the agreement to warrant title; and (2) the deadline for ratification was April 1, and that deadline had passed. With regard to the amendments, Mr. Holcomb stated they were in violation of Cowiche's covenant to provide good, absolute and marketable title. Cowiche's attorney responded by disputing whether April 1 was in fact the agreed upon deadline and by submitting a second ratification dated May 11, 1982, which omitted the language pertinent to the warranty of title but retained the language requiring payment in full of

the real estate contract.

In October 1982, Cowiche brought this action against Mr. Mayer for $79,125 allegedly due under the lease. Mr. Mayer answered, denying the claim. He subsequently moved for summary judgment which he supported with his own affidavit, attesting:

> It is an essential part of an oil and gas lease agreement that the fee mineral estate be obtained free and clear of any encumbrances and for that reason it was necessary to obtain proper ratifications. The . . . language inserted by Rainier and/or Feely renders the mineral rights substantially unmarketable because it subjects the lessee's right to withdraw the minerals to an unknown contingency. This encumbrance makes the lease rights less desirable in the context of a possible transfer of the lease rights in the normal course to any other oil producers, or participation in an area–wide development. It is my practice, and the most desirable course, to obtain the entire fee mineral estate so that one can be certain that if capital is expended to explore for minerals, that he will be able to withdraw the minerals without delay or intervention of the rights of third parties.

Cowiche responded with the affidavit of G. B. Howell, who attested he had been engaged in the business of oil and gas exploration and leasing for 47 years. In his opinion, the ratifications submitted by Rainier/Feely were proper:

> The ratification clearly states that the contract sellers adopt the Oil and Gas Lease in its entirety. . . . Therefore, a provision that a contract purchaser would be required to pay off the contract in the event of "any substantial withdrawal of minerals from the land" is merely an additional obligation of the contract purchasers and does not in any way affect the interests of the Lessee or impose on him any burden whatsoever.
>
>      . . . [As to the language stating the contract sellers would not warrant and agree to defend the title], [t]he contract purchasers have fully warranted title. . . . This additional provision, . . . is an agreement between the parties to the contract and does not impose any additional burden or restriction upon the Defendant Mayer. . . .
>      In conclusion, the undersigned, based upon his own

experience and upon his knowledge of the customs and usages of the trade, does not find that the language objected to . . . imposed any lien, encumbrance or burden. . . .

Douglas A. Wilson, counsel and attorney in fact for Cowiche, attested that on June 29, 1982, Mr. Mayer had recorded the ratification from Rainier/Feely and also had recorded several other documents relating to section 6. He stated the parties agreed that the April 1 target date for ratification could be extended and, for this purpose, provided for the escrow of funds and the payment upon receipt of the ratifications on or before July 1, 1982.

The Superior Court concluded as a matter of law that the ratification did not comply with the requirement that Cowiche warrant marketable title free of all liens, encumbrances, and burdens. Thus, it granted summary judgment to Mr. Mayer. Mr. Mayer and Gary Holcomb subsequently filed supplemental affidavits stating that the Rainier/Feely ratification had been recorded in error and that they were not aware of this mistake until notified of Mr. Wilson's affidavit days before the hearing on the summary judgment motion.

■■ First, Cowiche contends its action presents a genuine issue of material fact regarding the effect of the language of ratification on marketable title. It asserts the language requiring payment in full of the contract before removal of a substantial part of the minerals affected only its obligations, not Mr. Mayer's. It relies on other language in the ratification stating that the mineral lease is binding on Rainier/Feely. However, this argument ignores the language of the ratification which states: "The parties" recognize the full payment requirement. We hold the language adds a term to the real estate contract which Mr. Mayer would be bound by if he approved the ratification.

Cowiche also asserts that Mr. Howell's affidavit is evidence that this language, under the custom in the trade, does not affect Mr. Mayer's rights under the lease. What Mr. Howell says is that it is his opinion that the language

does not create an encumbrance, based upon his experience and knowledge of trade customs. He does *not* say that there exists a custom by which the language in question is routinely interpreted so as not to create rights in the contract seller against the lessee.

The term "encumbrance" has an established legal meaning, *i.e.,* "any right to, or interest in, land which may subsist in third persons, to the diminution of the value of the estate of the tenant . . ." *Hebb v. Severson,* 32 Wn.2d 159, 167, 201 P.2d 156 (1948). As stated above, the addition of the full payment language creates an interest in Rainier/ Feely which Mr. Mayer would be deemed to have accepted if he accepted the ratification. Thus, the Superior Court properly concluded as a matter of law that Cowiche had breached its agreement to provide marketable title, free of encumbrances, and Mr. Mayer's obligation to lease section 6 did not mature. *Jenson v. Richens,* 74 Wn.2d 41, 46, 442 P.2d 636 (1968).

■ Second, Cowiche argues that an issue of material fact exists as to whether Mr. Mayer waived any defect in the ratification. To establish waiver, it relies solely on the facts that Mr. Mayer recorded the ratification and other documents relating to section 6 and that recorded copies were returned to his office. To be effective, the waiver must be made intentionally. *Reynolds Metals Co. v. Electric Smith Constr. & Equip. Co.,* 4 Wn. App. 695, 700, 483 P.2d 880 (1971). Mr. Mayer attests in his affidavit that the recordings were unintentional, a clerical mistake.

■ According to Cowiche, Mr. Mayer's credibility is at issue. But to raise an issue of credibility at a hearing on a motion for summary judgment, the nonmoving party must present contradictory evidence or otherwise impeach the evidence of the moving party. *Balise v. Underwood,* 62 Wn.2d 195, 200, 381 P.2d 966 (1963). The fact Mr. Mayer recorded the ratification along with other documents relating to section 6 neither contradicts nor impeaches his claim that the recording was inadvertent. On the evidence presented, the trier of fact could only speculate as to whether

Mr. Mayer intended to waive his rights.

The judgment of the Superior Court is affirmed.

GREEN, C.J., and MUNSON, J., concur.