[No. 51400–3.  En Banc.  March 27, 1986.]

MARLIN DUNLAP, ET AL, *Petitioners,* v. MARVIN A. WAYNE, ET AL, *Respondents.*

*Michael K. Tasker* and *Hindman & Tasker,* for petitioners.

*McCush, Kingsbury, O'Connor, Ludwigson, Thompson & Hayes,* by *John S. Ludwigson,* for respondents.

UTTER, J.—Marlin Dunlap, plaintiff below, brought a defamation action against Dr. Marvin Wayne. The trial court ruled that a qualified privilege protected any communication of the defendant's, and dismissed the action on summary judgment. The Court of Appeals affirmed, holding that the communication at issue was constitutionally protected opinion. Dunlap appeals this adverse determination. Although we decline to reach the constitutional issue, we affirm the decision of the Court of Appeals.

Plaintiff Dunlap, while employed as branch manager for Home Savings and Loan Association (the Bank), relayed information about the potential for a condominium development to Robert Koivisto, a builder–contractor. In the fall of 1977 Koivisto formed a partnership with three other people (including defendant Dr. Marvin Wayne) to develop the project. Both Dunlap and his wife continued to devote time to the project. Koivisto testified that Dunlap spent 80 to 100 hours helping the partnership, and that Dunlap's wife performed substantial secretarial services for the partnership. Upon Koivisto's suggestion, the four partners agreed to pay Dunlap $10,000. Their contract, notarized in January 1978, provided in part:

> We hereby agree to pay to Marlin G. Dunlap or Candace L. Dunlap ten thousand dollars ($10,000.00). . . . The ten thousand dollars ($10,000.00) is for the consideration of finding the property, the ideas and consultation regarding the project. . . .

Deposition of Marvin A. Wayne (plaintiff's exhibit 1).

One partner testified that the partnership promised the money to encourage Dunlap to arrange financing. Koivisto testified that Dunlap did help Koivisto prepare loan applications, including one for the Bank. Wayne has introduced into evidence a letter that Dunlap wrote to apply for

financing from a California firm; the letter is written on Bank stationery and is dated June 5, 1978.

Prior to completion of the project, the partnership was dissolved and the property sold. Dunlap believed himself entitled to payment on the contract and in 1979 began to seek compensation from Wayne. Dunlap's attorney wrote a series of letters to Wayne, including one that read in part:

My client was surprised and hurt that in view of the ·partnership contract drawn up at his office and signed and notarized in December of 1977, and based on the mutual understanding between all parties, that my client would be fully compensated for his various services, including finders fee, professional counseling and advice, necessary contacts for condemnation with resulting tax benefits and obtaining possible capital for building condominium, et al.

Wayne C. Booth Deposition (plaintiff's exhibit 1). Wayne's attorney had an initial meeting with Dunlap's attorney, and on January 14, 1980 wrote him as follows:

I have now had the opportunity to go over the relevant documents and history of this situation with both of my clients, doctors Wayne and Schayes. . . . It appears from the background information that they have supplied that this Agreement . . . constitutes a *solicitation for a "kick-back"* to Mr. Dunlap for his services in trying to obtain financing from, among other sources, his own savings and loan association. I respectfully submit that the relevant banking authorities, including Mr. Dunlap's superiors at Highline [*sic*] Savings and Loan, would not be very happy to learn about this *solicitation of kick-backs* . . .

(Italics ours.) Deposition of Marvin A. Wayne (plaintiff's exhibit 2).

When Dunlap persisted in his requests for payment, Wayne called the Bank's president and told him of Dunlap's attempts to collect the $10,000. The president asked Wayne for documentation, and Wayne agreed to provide it. On about March 20, 1980, Wayne and his attorney met in the attorney's office with the executive vice-president of the Bank. At that meeting, Wayne detailed the history of his dealings with Dunlap and provided the documentation

requested by the Bank president. Included in this documentation were the payment agreement, Dunlap's collection letters, and the letter from Wayne's attorney.

The president met with Dunlap after speaking with the vice–president and receiving the documentation. Dunlap maintains that the president told him that Wayne had complained of Dunlap's attempts to solicit kickbacks and engage in shakedowns. Wayne, however, denied using those terms. The president also denied using those terms and did not recall Wayne's use of the terms. The Bank fired Dunlap in March 1980. The Bank president indicated that Dunlap's involvement in the condominium project was a factor contributing to his decision to fire him, but not the principal one.

Dunlap then initiated this action for defamation against Wayne. The trial court dismissed the case on summary judgment, holding that Wayne's communications with the Bank officials enjoyed the qualified privilege of "common interest."

The Court of Appeals concluded in an unpublished opinion that the special relationship necessary to give rise to a qualified privilege did not exist. The court nonetheless affirmed the summary judgment. Relying on *Mark v. Seattle Times*, 96 Wn.2d 473, 487, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982), the court concluded that Dunlap had not presented clear and convincing evidence of oral statements constituting defamation. The court also concluded that the attorney's letter was an expression of opinion, and that the statement was protected by the First Amendment as construed by the United States Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974).

## I

### Summary Judgment Standard

The standard that controls the defendant's motion to dismiss this defamation case needs clarification. In *Mark v. Seattle Times, supra,* we concluded that for "policy rea-

sons, rooted in the First Amendment," a defamation plaintiff must establish a prima facie case of "convincing clarity" to defeat a defense motion for summary judgment. That decision involved a media defendant, as have other decisions in which the *Mark* standard was invoked. *See, e.g., Chase v. Daily Record, Inc.,* 83 Wn.2d 37, 43, 515 P.2d 154 (1973); *Rye v. Seattle Times Co.,* 37 Wn. App. 45, 678 P.2d 1282 (1984); *Sims v. KIRO, Inc.,* 20 Wn. App. 229, 237, 580 P.2d 642 (1978), *cert. denied,* 441 U.S. 945 (1979).

■ First Amendment concerns at that time supported the special protection that we extended in *Mark v. Seattle Times, supra.*[1] A basic cost of defamation law is its potential chilling effect on the press. Note, *The Role of Summary Judgment in Political Libel Cases,* 52 S. Cal. L. Rev. 1783, 1793 (1979). However, the balance between First Amendment concerns of free speech and the individual's interest in reputation tips differently when a private individual sues a private individual for a statement about private concerns. This court has recognized that the importance of a private individual's reputation interest can counter First Amendment concerns. *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 444–47, 546 P.2d 81 (1976). Likewise, the United States Supreme Court has restricted First Amendment protection for statements about private affairs.

[T]he Court has frequently reaffirmed that speech on public issues occupies the "'highest rung of the hierarchy of First Amendment values,'" and is entitled to special protection.

In contrast, speech on matters of purely private concern

---

[1]We cannot tell how the United States Supreme Court will apply the First Amendment in this area. In *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811 (1971), a plurality of the Supreme Court recognized that the mere threat of expense of defending against a defamation suit can have a chilling effect on the media. However, Justice Rehnquist suggested in *Calder v. Jones,* 465 U.S. 783, 79 L. Ed. 2d 804, 813, 104 S. Ct. 1482 (1984) that the Court recognizes no special rules protecting defendants in summary judgment actions. This term the Supreme Court is considering this very issue in Anderson v. Liberty Lobby, No. 84–1602 (argued December 3, 1985). In any event, the Washington Constitution may provide heightened protection to media defendants. Const. art. 1, § 5; *see State v. Coe,* 101 Wn.2d 364, 679 P.2d 353 (1984).

is of less First Amendment concern. . . . In such a case, "[t]here is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas concerning self–government; and there is no threat of liability causing a reaction of self–censorship by the press. . . ."

(Citations omitted.) *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* ___ U.S. ___, 86 L. Ed. 2d 593, 105 S. Ct. 2939, 2946 (1985) (quoting in part from *Connick v. Myers,* 461 U.S. 138, 145, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983) and *Harley–Davidson Motorsports, Inc. v. Markley,* 279 Or. 361, 366, 568 P.2d 1359, 1363 (1977)).

For these reasons, this plaintiff should not have to meet the "convincing clarity" burden of proof that *Mark v. Seattle Times, supra,* imposed. The strict standard of *Mark* should not protect a nonmedia defendant sued for a statement about private affairs. Instead, the usual rules governing summary judgment should control. Under these rules, the trial court properly dismissed Dunlap's case if no genuine issue of material fact exists when the evidence and all reasonable inferences from the evidence are considered in the light most favorable to Dunlap. CR 56(c); *Wendle v. Farrow,* 102 Wn.2d 380, 686 P.2d 480 (1984).

## II
### EVIDENCE OF ORAL STATEMENTS

The Court of Appeals affirmed summary judgment dismissal of the plaintiff's allegations that the defendant made oral defamatory statements to Bank officials. This conclusion is correct even without the strict summary judgment standard of *Mark v. Seattle Times, supra.* For the following reasons we agree with the courts below that the plaintiff has failed to create a genuine issue of fact.

First, the plaintiff has offered inadmissible hearsay to establish that Wayne made oral defamatory statements. A court cannot consider inadmissible evidence when ruling on a motion for summary judgment. *Charbonneau v. Wilbur Ellis Co.,* 9 Wn. App. 474, 512 P.2d 1126 (1973). The Washington Rules of Evidence define hearsay as an out–of–

court statement offered to prove the truth of the matter asserted. ER 801(c). Plaintiff's only evidence of the alleged statements consists of his and his wife's descriptions of their conversation with the Bank president. Both allege that the president told them that Wayne had complained of Dunlap's insisting on a "kickback." The plaintiff is therefore trying to use out–of–court statements of the Bank president to prove that the defendant made an oral defamatory statement. Even if Wayne's alleged out–of–court oral defamatory statement is itself admissible, the plaintiff cannot introduce it by repeating the Bank president's out–of–court statement. 6 J. Wigmore, *Evidence* § 1770(2), at 265 n.6 (rev. ed. 1976); *Sanderson v. Moline,* 7 Wn. App. 439, 443, 499 P.2d 1281 (1972).

Second, the plaintiff contends that a court can and should draw an inference from the evidence presented that the defendant made oral defamatory statements charging the plaintiff with soliciting a kickback. As the plaintiff argues, undisputed facts reveal that (1) in the letter, the defendant's attorney threatened to notify the Bank of the plaintiff's "solicitation of kick–backs", (2) defendant Wayne did in fact contact the Bank, and (3) the Bank fired plaintiff Dunlap for his participation in the defendant's business.

This suggested inference does not qualify as evidence. A party must provide affirmative factual evidence to oppose a motion for summary judgment. CR 56(e); *Mackey v. Graham,* 99 Wn.2d 572, 663 P.2d 490, *cert. denied,* 464 U.S. 894 (1983). Moreover, the plaintiff asks this court to disregard the testimony of Bank officials to draw the suggested inference. The Bank president denied that he or Wayne used the words "kickback" or "shakedown." The Bank official who met with defendant Wayne also denied that Wayne used the words "kickback" or "shakedown" to characterize Dunlap's conduct. To raise an issue of credibility at a hearing on a motion for summary judgment, the nonmoving party must present contradictory evidence or otherwise impeach the evidence of the moving party. *See*

*Balise v. Underwood,* 62 Wn.2d 195, 200, 381 P.2d 966 (1963); *Cowiche Basin Partnership v. Mayer,* 40 Wn. App. 223, 228, 698 P.2d 567 (1985). The plaintiff has not placed the credibility of these Bank officials into issue with admissible contradictory or impeaching evidence.

## III
### Letter as Nonactionable Opinion

The letter written by the defendant's attorney, which the defendant gave to Bank officials, is the sole remaining potential source of liability. Wayne can be liable for transmitting the letter to the Bank even though he did not write the letter himself. *See* Restatement (Second) of Torts § 581(1) (1977) (hereinafter Restatement). However, the Court of Appeals concluded that the allegedly defamatory statements in the letter constitute nonactionable statements of opinion. We agree.

English–American defamation law has always distinguished between fact and opinion. Keeton, *Defamation and Freedom of the Press,* 54 Tex. L. Rev. 1221, 1240 (1976). Traditionally, the privilege of "fair comment" protected statements of opinion on matters of public interest. Keeton, *supra; see, e.g., Miles v. Louis Wasmer, Inc.,* 172 Wash. 466, 20 P.2d 847 (1933). Statements of opinion on matters of private concern enjoyed a less certain status. Apparently, the traditional defense for a statement of opinion on private affairs was "justification," which was an assertion that to the extent the statement was fact, it was true, and to the extent it was opinion, it was justifiable. Hill, *Defamation and Privacy Under the First Amendment,* 76 Colum. L. Rev. 1205, 1236–37 (1976).

Dicta from the United States Supreme Court decision of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974) has shifted the analysis of alleged statements of opinion. That decision states:

> We begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its

correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.

(Footnote omitted.) 418 U.S. at 339–40. Reasoning from this dicta, the Restatement concluded:

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

Restatement § 566, at 170; *see also* § 566, comment *c,* at 172.

At least one court has expressly extended the dicta of *Gertz* to afford constitutional protection to statements of opinion about private matters. *See Bucher v. Roberts,* 198 Colo. 1, 3–5, 595 P.2d 239, 241–42 (1979). *See also Benjamin v. Cowles Pub'g Co.,* 37 Wn. App. 916, 684 P.2d 739 (1984). Other courts, however, have simply applied Restatement § 566. *See, e.g., Avins v. White,* 627 F.2d 637, 642 (3d Cir.), *cert. denied,* 449 U.S. 982, 66 L. Ed. 2d 244, 101 S. Ct. 398 (1980) (predicting how Delaware courts would rule); *MacConnell v. Mitten,* 131 Ariz. 22, 25, 638 P.2d 689, 692 (1981); *Beckman v. Dunn,* 276 Pa. Super. 527, 535–36, 419 A.2d 583, 587 (1980).

■ We believe the rule of Restatement § 566 should be adopted. It is unnecessary to reach the issue of constitutional protection of statements of opinion on private affairs. Common law principles are sufficient to support the conclusion that statements of "pure" opinion should be nonactionable. *See, e.g.,* Keeton, at 1240, 1248–49.

The struggles of courts and commentators illustrate the difficulty of determining whether a statement is nonactionable opinion. *See, e.g., Ollman v. Evans,* 750 F.2d 970 (D.C. Cir. 1984) (10–person court produced nine opinions on the issue). *See also* Restatement § 566, comment *b;* Keeton, at 1249–59. Some have pointed out that courts should not focus on establishing a rigid distinction between "fact" and "opinion"; they argue that courts instead should focus on establishing factors to identify whether a statement is

actionable. *See, e.g.,* Note, *Fact and Opinion After Gertz v. Robert Welch, Inc.: The Evolution of a Privilege,* 34 Rutgers L. Rev. 81, 114, 122–27 (1981). Courts accordingly have adopted multifactor tests to distinguish actionable from nonactionable statements. *See Ollman v. Evans,* 750 F.2d at 979–84 (4–factor test); *Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 783–84 (9th Cir. 1980) (3–factor test). The Washington Court of Appeals has adopted a 3–factor test. *Benjamin v. Cowles Pub'g Co.,* 37 Wn. App. at 923. These courts emphasize the importance of considering the totality of circumstances in which a statement was made.

We agree that examining a statement in the totality of the circumstances in which it was made is the best means to determine whether a statement should be characterized as nonactionable opinion. To determine whether a statement is nonactionable, a court should consider at least (1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts.

First, the nature of the medium can affect whether a statement is received as "fact" or "opinion": statements of opinion are expected to be found more often in certain contexts, such as editorial pages or political debates. The court should consider the entire communication and note whether the speaker qualified the defamatory statement with cautionary "terms of apparency." *Information Control Corp.,* 611 F.2d at 784. Second, the nature of the audience is important. As one commentator writes: "Paramount are audience expectations. In the context of ongoing public debates, the audience is prepared for mischaracterizations and exaggerations, and is likely to view such representations with an awareness of the subjective biases of the speaker." Note, 34 Rutgers L. Rev. at 122. The court should thus consider whether the audience expected the speaker to use exaggeration, rhetoric, or hyperbole.

The third and perhaps most crucial factor to consider is whether the statement of opinion implies that undisclosed

facts support it. The Restatement specifically defines an opinion as actionable only if it "implies the allegation of undisclosed defamatory facts". Restatement § 566. Comment *c* elaborates, at page 173:

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently.

Arguments for actionability disappear when the audience members know the facts underlying an assertion and can judge the truthfulness of the allegedly defamatory statement themselves.

> When a publisher makes a qualified or unqualified assertion of fact based on true information supplied to the public or equally available to the public, he simply deduces a particular fact about the defamed person from known facts. . . . Those who receive the communication are in a position to judge for themselves the validity of the deduction made. . . . [Such] opinions must be distinguished from evaluative opinions expressing a value judgment concerning specific conduct. The distinction will eliminate much confusion of the law of defamation if the law recognizes that deductive opinions are not necessarily in the same category of actionability as . . . communications that convey false and defamatory information about the plaintiff . . .

*Keeton*, at 1250–51.

After considering the totality of the circumstances, we agree with the Court of Appeals that, as a matter of law, the statements at issue in this case are nonactionable opinion.[2] First, the medium by which the statement was

---

[2]The Court of Appeals decided this issue as a question of law. Several courts have concluded that when a statement is ambiguous, and can be characterized as either fact or opinion, its characterization becomes a question of fact for the jury. *See, e.g., Good Gov't Group of Seal Beach, Inc. v. Superior Court,* 22 Cal. 3d 672, 681–82, 586 P.2d 572, 576, 150 Cal. Rptr. 258 (1978); *Myers v. Boston Magazine Co.,* 380 Mass. 336, 403 N.E.2d 376 (1980); *Nevada Indep. Broadcasting Corp. v.*

published is a letter written during negotiations by one attorney to another. Statements of opinion and exaggeration should be expected in such a context. Most individuals would probably react to the letter as Wayne did: "I assumed that that was how lawyers talked to lawyers." Wayne Deposition of July 23, 1980, at 12.

Second, the audience consisted of Bank officials prepared to discuss Wayne's complaints about Dunlap. The officials should have been prepared for mischaracterization and exaggeration. They had reason to consider carefully the subjective biases of Wayne and his attorney in order to avoid wrongly firing the plaintiff. In short, they had reason to treat the statement as opinion, not fact.

Finally, the statement was published in circumstances in which the audience knew the facts underlying the statement. Shortly after Wayne initially contacted the Bank, a meeting was set up to discuss his complaints about Dunlap. A vice–president, Mr. Bell, accordingly drove to Bellingham and met with Dr. Wayne in his attorney's office. Wayne and Bell both testified that during this meeting Wayne described his relationship with Dunlap and the basis of his complaints of harassment. It was also at this meeting that Wayne's attorney provided the Bank with documentation that included the letter at issue. The letter thus was transmitted to Bank officials in conjunction with a meeting convened for the very purpose of disclosing the basis of the defendant's complaints about the plaintiff. The defendant's disclosure of the facts underlying his complaint during the meeting places the statement contained in the letter within the protection of Restatement § 566.

## IV
### PRIMA FACIE CASE

We also note that summary judgment dismissal is

---

*Allen,* 99 Nev. 404, 410–11, 664 P.2d 337, 342 (1983); *Kutz v. Independent Pub'g Co.,* 97 N.M. 243, 638 P.2d 1088 (Ct. App. 1981). *See also* Restatement (Second) of Torts § 566, comment *c* (1977). We need not reach this issue in this case. The circumstances of the communication at issue dispel any ambiguity.

appropriate because the plaintiff has failed to place into issue material facts necessary to prove his case. This court has consistently held since *Mark v. Seattle Times,* 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982), that a plaintiff suing for defamation must establish "fault" as one of the elements of defamation. We have concluded further that a private individual need prove only negligence in order to establish "fault." *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 546 P.2d 81 (1976). Thus Dunlap must prove that Wayne acted negligently in order to establish a prima facie case of defamation. Dunlap is unable to provide the evidence necessary even to create an issue of fact about any fault involved in Wayne's conduct.

In the court below defendant Wayne moved for summary judgment alleging that a qualified privilege protected his publication of the letter and that he had not abused that privilege. To decide whether Wayne had abused his alleged privilege, the trial court had to consider whether Wayne acted (1) without fair and impartial investigation, or (2) without reasonable grounds for believing in the truth of the statement. *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956, 959–60, 603 P.2d 828 (1979); *Twelker v. Shannon & Wilson, Inc.,* 88 Wn.2d 473, 564 P.2d 1131 (1977). This inquiry is virtually identical to the inquiry into whether Wayne acted negligently. *Cf. Taskett,* 86 Wn.2d at 445.

The trial court concluded that the plaintiff had not provided any facts from which a jury would be entitled to find unreasonable conduct. Our review of the record supports the trial court's conclusion. The plaintiff has not provided any admissible evidence of the defendant personally making a defamatory statement. The only defamatory statement at issue is a characterization made by defendant's attorney in a letter. The defendant's attorney transmitted this statement to the Bank only in conjunction with a meeting convened to discuss the defendant's complaints. In short, Dunlap has not provided any specific facts that suggest that Wayne acted without due care when he allowed

his attorney to provide the Bank documentation to support Wayne's complaints about Dunlap.

The purpose of dismissing a case by summary judgment is to avoid a useless trial when no genuine issue of a material fact exists. The law of defamation provides a bewildering array of defense theories, and the three court opinions produced by this case seem to have explored most of those theories. In the end we conclude that the trial court was correct when it dismissed Dunlap's defamation suit. However, we choose two different theories. First, in these circumstances the statement in Wayne's attorney's letter constituted nonactionable opinion. Second, Dunlap failed to establish a prima facie case of defamation. Defamation simply is the incorrect theory by which to redress any wrongs done Dunlap by the partnership. For these reasons, the judgment of the trial court is affirmed.

BRACHTENBACH, PEARSON, and ANDERSEN, JJ., and MORGAN, J. Pro Tem., concur.

DORE, J. (dissenting)—The majority characterizes the allegedly defamatory remarks in the letter Dr. Wayne presented to Dunlap's employer as nonactionable statements of opinion. As a result, the majority upholds a summary judgment dismissal of the plaintiff's defamation suit. I cannot agree with this court's characterization of this letter, and therefore I would overturn the trial court's summary judgment and remand the case for trial.

The distinction between actionable statements of fact, and nonactionable statements of opinion, as the majority states, is by no means clear. Merely labeling a comment as "an opinion" does not ensure that the statement is nonactionable. Restatement (Second) of Torts § 566 (1977), which the majority in my opinion correctly adopts, states that

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature

is actionable *only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.*
(Italics mine.) Restatement (Second) of Torts § 566, at 170 (1977). I believe that the letter does imply allegations of undisclosed facts which are defamatory to Dunlap, and I would not deny Dunlap's right to damages before trial by holding the letter is a nonactionable opinion.

The letter states in part that "[i]t appears from the background information . . . that this Agreement . . . constitutes a solicitation for a 'kick–back' to Mr. Dunlap for his services in trying to obtain financing from, among other sources, his own savings and loan association." Brief of Appellant, exhibit 1. The majority focuses on the word "kick–back" and holds that this was an opinion characterizing the actions of the plaintiff. This may be true. Nevertheless the majority in my mind ignores that it is not this characterization which is actionable, but the allegation of underlying facts on which it is based.

The defendant has stated that Dunlap attempted to enforce an agreement compensating him for services in trying to obtain financing for the condominium project. Such action would be highly improper for a man in Dunlap's position, irrespective of whether the defendant labels it a "kick–back" or any other term. Dr. Wayne's publication of the letter implying the facts surrounding the "kick–back" in my mind therefore, if incorrect (which must be assumed for the purpose of this summary judgment motion) is actionable.

In other cases we have held that a statement about an employee which implies by opinion defamatory facts is actionable. *Getchell v. Auto Bar Sys. Northwest, Inc.,* 73 Wn.2d 831, 440 P.2d 843 (1968) (previous employer's statements that plaintiff wrongly retained company funds actionable); *Romano v. United Buckingham Freight Lines,* 4 Wn. App. 929, 484 P.2d 450 (1971) (previous employer's comment that plaintiffs were dishonest actionable). This is especially true when the facts which the defendant alleges are compared with the facts asserted by the plaintiff. Dun-

lap has submitted affidavits and depositions which, if true, tell a story materially different from Dr. Wayne's. Dunlap asserts that he located the real estate to be used for the condominium on his own time, but lacked the financial resources to develop it. He therefore told a friend, Robert Koivisto, about the project, and Koivisto formed a partnership with Dr. Wayne and two others to acquire and develop the land. Dunlap, on his own time, and with his wife's help in typing various documents, consulted with the partnership and offered valuable advice, spending as much as 100 hours on the project.

Furthermore, the partnership agreed to pay Dunlap in January 1978 at Koivisto's, and not Dunlap's, request. It was not until April 1978 that the partnership sought financing, and Dunlap played no role in the partnership's attempt to secure financing with Dunlap's bank. Dunlap's bank in fact denied its application. The only assistance which Dunlap gave the partnership to obtain financing was one letter written on its behalf to another financing company located in Southern California.

If these facts are true, then the defendant's publication of a letter to Dunlap's employer stating that the agreement between the partnership and Dunlap was a solicitation for a "kick–back" is defamatory. The question is not whether the word "kick–back" is a nonactionable opinion, but whether the word implies undisclosed facts which are defamatory. I believe it does, and I would reverse the Court of Appeals and remand this case to trial.

DOLLIVER, C.J., GOODLOE, J., and PETRIE, J. Pro Tem., concur with DORE, J.