# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DAVID CHRISTMAN and ROBIN CHRISTMAN, individually and as husband and wife and the marital community comprised thereof,<br><br>Appellants,<br><br>v.<br><br>EASTGATE THEATRE, INC. d/b/a REGAL ENTERTAINMENT GROUP, a Washington Corporation; SIERRA CONSTRUCTION COMPANY, INC., a Washington Corporation; WAL-MART STORES, INC. (Number 2385), a Washington Corporation,<br><br>Respondents,<br><br>HOME ELECTRIC, a Washington Corporation,<br><br>Defendant. | No. 69623-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>FILED: June 16, 2014 |

APPELWICK, J. – Christman slipped and fell on wet grass when he took a shortcut down a landscaped slope rather than use a nearby concrete stairway. Because he failed to set forth material facts indicating that the slope constituted an unreasonably dangerous condition or that the landowners should have foreseen he would not protect himself against the obvious risks of a grassy slope, the trial court properly dismissed his negligence claims on summary judgment. We affirm.

## FACTS

In August 2008, Wal-Mart Stores Inc. contracted with Sierra Construction Company to carry out improvements near its store at the Auburn Supermall. The contract included construction of a new parking area, which Wal-Mart shared with

No. 69623-8-I/2

Regal Cinemas Stadium 17, relocation of a portion of Supermall Drive, and the creation of a drop-off lane and adjacent sidewalk for theater patrons. The City of Auburn approved the completed construction work on April 2, 2009.

A preexisting concrete stairway with four steps leads from the new parking area to the front entrance of the theater and connects with a concrete walkway that circles the complex. Next to the stairway, a landscaped grass strip slopes down from the concrete walkway to the lower sidewalk, drop-off lane, and parking lot.

Shortly after noon on April 3, 2009, David Christman drove to the Auburn Supermall, intending to meet someone who was selling a bicycle. Christman parked his car in the recently completed parking lot.

While waiting for the seller, Christman walked from the parking lot to use an ATM (automatic teller machine) located outside of the theater near the ticket booth. Christman could not recall whether he used the stairway to reach the ATM or whether he walked up the slope.

After withdrawing cash from the ATM, Christman decided to take a shortcut down the slope toward the parking lot. As he counted his money, Christman's foot slipped out from under him and he fell on his back. Christman's clothing was wet and muddy from the fall. Maria Robinett, a Regal assistant manager, was outside in the parking lot and saw Christman slip and fall on the slope. Robinett rushed over and helped Christman clean up.

Christman said the slope looked "like any other hill" and did not seem unreasonably steep. He did not step into any depressions, trip over a foreign object, or see any pooling of water on the grass or the lower sidewalk. Christman believed that he fell because the grassy slope was wet and "just slick." Although it had not rained on the day he fell and the pavement was dry, Christman acknowledged that rain is common in Washington and that he was not surprised that grass would be wet at the beginning of April.

According to Robinett, the new parking lot changed the general flow of pedestrians to the theater. Previously, the area in front of the theater was an unused dirt field. Theater patrons parked in lots on the side or behind the theater and approached the front entrance via the adjacent concrete walkways.

On April 2, 2009, the day before Christman's accident, Robinett assisted a theater patron who had taken a shortcut after exiting the theater and fallen on the slope in the same general area. On the same day, Robinett strung yellow caution tape along the upper sidewalk to warn patrons about the slope. Christman denied that there was caution tape in place before his accident.

After the new parking lot opened, Robinett saw theater patrons using the grassy slope as a shortcut, but indicated that the usage became "an issue" only after the accidents on April 2 and April 3. Robinett stated that a portion of the grassy slope in the area where Christman fell had "turned to dirt" from the foot traffic and stayed "pretty moist" because "the weather there is usually wet."

No. 69623-8-I/4

On August 19, 2011, Christman filed a complaint for damages against Regal, Wal-Mart, and Sierra, alleging negligence in maintenance of the grassy slope and the failure to warn of a hazardous condition. Regal, Wal-Mart, and Sierra each moved for summary judgment. As part of his response, Christman submitted the declaration of Daniel Johnson, a certified professional ergonomist, who concluded that the grassy slope constituted an unreasonably dangerous condition.

Following a hearing on November 2, 2012 the trial court granted all three motions for summary judgment, concluding that the landscaped grassy slope did not constitute an unreasonably dangerous condition as a matter of law. The trial court denied Christman's motion for reconsideration on November 21, 2012.

DISCUSSION

An appellate court reviews summary judgment orders de novo, undertaking the same inquiry as the trial court. See Greenhalgh v. Dep't of Corr., 160 Wn. App. 706, 713-14, 248 P.3d 150 (2011). We consider the materials before the trial court and construe the facts and inferences in the light most favorable to the nonmoving party. Hubbard v. Spokane County, 146 Wn.2d 699, 706-07, 50 P.3d 602 (2002). Summary judgment is proper only if there is no genuine issue of material fact. CR 56(c); Hubbard, 146 Wn.2d at 707. The party opposing summary judgment "may not rely merely upon allegations or self-serving statements, but must set forth specific facts showing that genuine issues of material fact exist." Newton Ins. Agency &

-4-

Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 157, 52 P.3d 30 (2002).

In order to prevail on his negligence claim, Christman must prove duty, breach, causation, and injury. Tincani v. Inland Empire Zoological Soc., 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). Whether the defendant owes a duty to the plaintiff is generally a question of law. Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). In a premises liability action, the scope of the duty of care depends on the entrant's common-law status as an invitee, licensee, or trespasser. Tincani, 124 Wn.2d at 128.

For purposes of summary judgment, Christman's status as a business invitee is undisputed. A proprietor is liable to business invitees for physical harm caused by a condition on land if he or she (1) knows of, or by the exercise of reasonable care would discover, that the condition involves an unreasonable risk of harm; (2) should expect that invitees would not discover the danger or would fail to protect themselves from it; and (3) fails to exercise reasonable care to protect invitees against the danger. Kamla v. Space Needle Corp., 147 Wn.2d 114, 125-26, 52 P.3d 472 (2002). A proprietor is not liable to invitees for any condition on land "whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Iwai v. State, 129 Wn.2d 84, 94, 915 P.2d 1089 (1996) (emphasis added) (quoting Restatement (Second) of Torts § 343A, at 218).

Christman contends there is a material factual dispute as to whether the condition of the grassy slope was open and obvious or whether it constituted a deceptively dangerous condition. He argues that the evidence supported an inference that the slope was "deceptively dangerous because it was wet, water-logged and deceptively steep."

But, Christman submitted no evidence tending to show that the drainage of the landscaped grassy slope was inadequate. Christman acknowledged in his deposition that rain is common in Washington and that he was not surprised the grass on the slope was wet.

Nor did Christman make any showing that the slope failed to comply with applicable regulations or code requirements or that the design, construction, or maintenance of the area was deficient. Contrary to Christman's suggestion, the mere fact Regal was aware that some patrons used the slope as a shortcut to or from the parking lot did not impose an independent duty to maintain the grassy slope as a "walkway." See Hoffstatter v. City of Seattle, 105 Wn. App. 596, 600, 20 P.3d 1003 (2001) (although pedestrian use of landscaped parking strips must be anticipated, "they are not sidewalks and cannot be expected to be maintained in the same condition)."

The declaration of Daniel Johnson provides no evidentiary support for Christman's arguments. Johnson, a "human factors and safety expert," asserts that he "took measurements and photographs" of the area where Christman fell. As the

trial court noted, however, the measurements and Johnson's analysis of those measurements are not in the record. Rather, Johnson's declaration asserts only that the slope was "too steep to be safely used as a walkway," the location of the grassy slope "induce[d] people . . . to walk on that slope," the grassy slope was not adequately designed to prevent business patrons from slipping on wet grass," and "the slope constituted an <u>unreasonably dangerous condition</u>."

In order to preclude summary judgment, an expert's affidavit must include more than mere speculation or conclusory statements. <u>See</u> <u>Dunlap v. Wayne</u>, 105 Wn.2d 529, 536, 716 P.2d 842 (1986) (affidavits submitted in opposition to summary judgment must set forth facts that would be admissible in evidence). Because Johnson's declaration contains only conclusory allegations, unsupported by any supporting facts or admissible evidence, it does not create the slightest inference that the grassy slope constituted an unreasonably dangerous condition. <u>See</u> <u>Guile v. Ballard Cmty. Hosp.</u>, 70 Wn. App. 18, 25-26, 851 P.2d 689 (1993) (expert's affidavit, including conclusion that complications were caused by defendant's "faulty technique," was insufficient to defeat summary judgment motion).

Christman also asserts that Regal was aware that the grassy slope was dangerous. But, Robinett's acknowledgment that the slope was an "issue" clearly referred to the period after the accidents on April 2 and April 3. Christman acknowledged that at the time of the accident, he could have used the concrete walkway and stairway that Regal provided for its patrons, the slope looked "like any

other hill," wet grass was a common and foreseeable condition, and the grass did not conceal any depressions or foreign objects. Even viewed in the light most favorable to Christman, the evidence failed to establish that the defendants should have foreseen that pedestrians would fail to protect themselves against the obvious risks of a wet, grassy slope. "[N]o published case in Washington or elsewhere has held that wet grass is a dangerous condition that a landlord should expect an invitee to fail to protect themselves against." McDonald v. Cove to Clover, ___ Wn. App. ___, 321 P.3d 259, 261-62 (2014).

The trial court properly dismissed Christman's claims on summary judgment.

Affirmed.

WE CONCUR: